UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| SUNCOAST WATERKEEPER, OUR CHILDREN'S EARTH FOUNDATION, and ECOLOGICAL RIGHTS FOUNDATION,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ST. PETERSBURG,<br><br>Defendant. | Civil Case No.:<br><br>8:16cv3319 T27 AEP |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**

Suncoast Waterkeeper ("SCWK"), Our Children's Earth Foundation ("OCE") and Ecological Rights Foundation ("EcoRights") (collectively, "Plaintiffs"), by and through their counsel, hereby allege:

I.  **JURISDICTION AND VENUE**

1. This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA") (*see* 33 U.S.C. § 1365). This Court has subject matter jurisdiction over the parties and this action pursuant to section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2. On September 28, 2016, Plaintiffs issued a sixty (60) day notice letter ("Notice Letter") to the City of St. Petersburg ("Defendant" or "St. Petersburg"). The Notice Letter informed St. Petersburg of its violations of the Clean Water Act and of Plaintiffs' intention to file suit against St. Petersburg. The Notice Letter was sent to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IV, and the Secretary of the Florida

Complaint                                                           1

Department of Environmental Protection ("DEP") as required by section 505(b)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A). The Notice Letter was also sent to the Executive Director of the Southwest Florida Water Management District ("Regional District"). The Notice Letter is attached hereto as Exhibit 1 and is incorporated herein by reference.

3. More than sixty (60) days have passed since the Notice Letter was issued to St. Petersburg and the state and federal agencies.

4. Plaintiffs are informed and believe, and thereon allege, that neither EPA nor the state of Florida has commenced or is diligently prosecuting an action to redress the violations alleged in the Notice Letter and in this complaint under section 505(b)(1)(B) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under section 309(g) of the Clean Water Act, 33 U.S.C. § 1319(g).

5. Venue is proper in the Middle District of Florida, Tampa Division, pursuant to section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district, specifically Pinellas County.

## II. INTRODUCTION

6. Plaintiffs allege the following violations of the Clean Water Act: (1) discharges of pollutants to waters of the United States without National Pollution Discharge Elimination System ("NPDES") Permit authorization in violation of section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a); and (2) violations of the *State of Florida Municipal Separate Storm Sewer System Permit*, NPDES Permit No. FLS000007-004, ("MS4 Permit"). St. Petersburg's violations of the Clean Water Act and its NPDES permit are ongoing and continuous.

## III. PARTIES AND BACKGROUND

A. **Plaintiffs**

7. SCWK is a non-profit public benefit corporation with members throughout the Tampa Bay area, dedicated to protecting and restoring the Florida Suncoast's waterways through enforcement, fieldwork, advocacy, and environmental education for the benefit of the communities that rely upon

Complaint

2

these precious coastal resources. Pinellas County waterways and communities are included in SCWK's area of operation. SCWK has been registered as a non-profit corporation in Florida since 2012 and has maintained its good and current standing in Florida since that time. SCWK is a licensed member of Waterkeeper Alliance, Inc., an international non-profit environmental organization, made up of over 300 separate Waterkeeper programs, such as SCWK. SCWK's office is located in Sarasota, Florida.

8. OCE is a non-profit public benefit corporation with members throughout the United States, including Florida and specifically the Tampa Bay area, dedicated to protecting the public, especially children, from the health impacts of pollution and other environmental hazards and to improving environmental quality for the public benefit. Another aspect of OCE's mission is to participate in environmental decisionmaking, enforce environmental laws (including via citizen suits), both federal and state, to reduce pollution, and to educate the public concerning those laws and their enforcement.

9. EcoRights is a non-profit public benefit corporation with members across the United States, including Florida and specifically the Tampa Bay area. Among other work it does, EcoRights focuses on protecting surface waters from pollution and degradation. EcoRights represents citizens who are striving to protect waterways from pollution and secure the multitude of public and private benefits that follow from clean, vibrant waters: safe drinking water, abundant and diverse wildlife populations, healthy recreational activities, and economic prosperity from commercial, sport, and subsistence fishing; and other commercial activities that depend on clean water. To further its environmental advocacy goals, EcoRights actively seeks federal and state agency implementation of state and federal water quality related laws, and as necessary, directly initiates enforcement actions on behalf of itself and its members.

10. SCWK, OCE and EcoRights' members use and enjoy the ocean and bay waters and other waters adjoining and in St. Petersburg for body contact water sports and other forms of recreation, wildlife observation, aesthetic enjoyment, educational study, and spiritual contemplation.

11. St. Petersburg's illegal discharges of raw and/or partially treated sewage to ocean and bay waters and other waters adjoining and in St. Petersburg degrade water quality and harm aquatic life in these waters, and thus impairs Plaintiffs' members' use and enjoyment of the ocean and bay waters and other waters adjoining and in St. Petersburg.

12. The interests of Plaintiffs' members have been, are being, and will continue to be adversely affected by St. Petersburg's failure to comply with the MS4 Permit and the Clean Water Act. The relief sought herein will redress the harms to Plaintiffs caused by St. Petersburg's activities. Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs' members, for which harm they have no plain, speedy, or adequate remedy at law.

**B. City of St. Petersburg**

13. St. Petersburg is a municipality incorporated under the laws of the state of Florida and a person within the meaning of Section 403.031(5), Fla. Stat.

**1. The Sewage Collection and Treatment System**

14. St. Petersburg owns and operates wastewater reclamation facilities ("WRFs") and appurtenant sewage wastewater collection and transmission systems ("WCTS") which collectively constitute a publicly owned treatment works (POTW) as defined in CWA section 212(2) and 40 C.F.R. section 125.58(s).

15. The WCTS consists of pipes and other manmade conveyances, and constitutes a point source under the Clean Water Act. *See* 33 U.S.C. § 1362(14).

16. All wastewater collected within St. Petersburg is transported to the POTW. The POTW includes the following WRFs and associated WCTS serving the City of St. Petersburg and other portions of Pinellas County.

    Albert Whitted Water Reclamation Facility, 601 8th Ave. S.E.

    Northeast Water Reclamation Facility, 1160 62nd Ave. N.E.

    Northwest Water Reclamation Facility, 7500 26th Ave. N.

    Southwest Water Reclamation Facility, 3800 54th Ave. S.

    St. Petersburg Master Reuse System, 1650 Third Ave. N.

17. The WRFs are individually permitted under the State of Florida Domestic Wastewater Facility Permit Program ("State Permits").[1]

---

[1] Albert Whitted Water Reclamation Facility, Wastewater Permit No. FLA128830; Northwest Water Reclamation Facility, Wastewater Permit No. FLA128821; Northeast Water Reclamation Facility, Wastewater Permit No. FLA 128856; Southwest Water Reclamation Facility, Wastewater Permit No. FLA128848.

Complaint

4

18. The dates and locations of, and all other pertinent details concerning, St. Petersburg's sewage spills are well known to St. Petersburg, as St. Petersburg is required to monitor and report these spills to the DEP. *See* State Permits, General Conditions, § IX.20.a.(4) and (b).

19. Each of these spills that has caused pollutants to flow into waters of the United States constitutes a separate violation of CWA section 301(a).

20. St. Petersburg is responsible for operating and maintaining the WCTS, tasks which include, but are not limited to: collecting and conveying sewage through the WCTS, conducting routine maintenance, cleaning, and inspection of the WCTS; and responding to citizens' complaints regarding discharges of raw and/or partially treated sewage.

21. St. Petersburg is responsible for operating and maintaining the WRFs, tasks which include, but are not limited to, treating and properly disposing of sewage conveyed to the WRFs, conducting routine maintenance, cleaning, and inspection of the WRFs, and responding to citizens' complaints regarding discharges of raw and/or partially treated sewage.

22. St. Petersburg is responsible for operating and maintaining the MS4, tasks which include, but are not limited to, preventing the discharge of non-stormwater (*i.e.*, any substances other than storm water including but not limited to sewage) into the MS4.

23. As owner and operator of the WRFs and WCTS, St. Petersburg is responsible for violations of Clean Water Act section 301(a) and MS4 Permit alleged herein.

### 2. Sanitary Sewer Overflows From the WRFs and WCTS

24. St. Petersburg has reported numerous overflows and discharges of raw and/or partially treated sewage from its WRFs and WCTS since September 28, 2011. These overflows and discharges are referred to as sanitary sewer overflows ("SSOs"). St. Petersburg's SSOs are documented in its internal SSO reports, call out reports, service requests, spreadsheets and tables summarizing SSOs from the WCTS, SSO reports submitted by St. Petersburg to DEP and the Pinellas County Department of Health, and in other correspondence to and from St. Petersburg indicating SSOs from its WCTS.

25. Of the SSOs from the WRFs and WCTS since September 28, 2011, St. Petersburg has reported that many have discharged to surface waters and/or into the municipal separate storm sewer systems ("MS4") operated by St. Petersburg.

26. An MS4 is defined as "a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains)" owned or operated by a state, city, or town that is designed or used for collecting or conveying storm water and that discharges to waters of the United States. *See* 40 C.F.R. §§ 122.26(b)(8)(i)-(iv); *see also* 40 C.F.R. § 122.26(b)(18).

27. The MS4 owned and operated by St. Petersburg is a point source under the Clean Water Act. *See* 33 U.S.C. § 1362(14).

28. SSOs from the WRFs and WCTS, as well as SSOs that enter St. Petersburg's MS4 from the WCTS and/or from privately-owned lateral lines, are discharged to Tampa Bay, the Gulf of Mexico, and other waters of the United States in or adjoining St. Petersburg, and/or to the MS4 that then discharges to waters of the United States.

29. St. Petersburg has failed to adequately operate, maintain, repair, replace, and/or update the WRFs and/or WCTS, thus resulting in SSOs.

30. St. Petersburg closed the Albert Whitted WRF despite express analysis by its routine consultant expert advising St. Petersburg that closure of the Albert Whitted ERF would leave the City without adequate capacity to treat sewage and avoid SSOs during some wet weather events. Closure of the Albert Whitted WRF caused several days of large SSOs from the WCTS.

31. St. Petersburg has reported that many of the SSOs from the WCTS are the result of unaddressed defects in sewer lines such as extensive line cracking, sags in lines, and misaligned joints; broken sewer lines, pump station equipment failures, and undersized sewer lines or pump station pumping and/or storage capacity.

32. St. Petersburg has reported that many of the SSOs from the WCTS are dry weather spills caused by fats, oil and grease in sewer lines, and blockages caused by roots and debris.

33. Another major source of St. Petersburg's SSOs is wet weather spills caused by the WCTS's inadequate capacity to handle peak wet weather flows. Flows through the WCTS increase considerably during wet weather due to the infiltration and inflow of storm water and groundwater into sewer pipes, thus overwhelming the capacity of the WCTS and WRFs causing SSOs.

34. SSOs from the WRFs and WCTS are also caused by the deterioration of sewage

infrastructure, under-funding of repairs, and mismanagement.

### 3. The Municipal Separate Storm Sewer System

35. DEP has issued MS4 Permit Number FLS000007-004 (the "MS4 Permit") to St. Petersburg.

36. The MS4 Permit authorizes St. Petersburg to discharge stormwater to waters of the State in accordance with the approved Stormwater Management Program, effluent limitations, monitoring requirements, and other provisions as set forth in the permit.

37. St. Petersburg owns and operates the MS4. *See* MS4 Permit § I.A.

38. Under the terms of the MS4 Permit, St. Petersburg is required to effectively prohibit the discharge of non-stormwater into its storm sewer system. *Id.* § I.D.

39. Additionally, St. Petersburg is required to implement procedures to prevent, contain, and respond to spills that may discharge into the MS4. *See* MS4 Permit, Illicit Discharges and Improper Disposal, § 7(d).

40. St. Petersburg's MS4 serves the areas also served by the WCTS. The MS4 contains numerous storm drain inlets that lead to underground storm drain pipes, which discharge to Tampa Bay, the Gulf of Mexico, and other waters of the United States in or adjoining St. Petersburg.

41. As owner and operator of the MS4, St. Petersburg is responsible for violations of the Clean Water Act alleged herein related to discharges of sewage into or from the MS4.

### C. The Local Waterways that Receive St. Petersburg's Illegal Discharges and the Environmental Impacts from those Discharges

42. The WRFs and WCTS are located in watersheds that drain to Tampa Bay, the Gulf of Mexico, and other water bodies, streams, or tributaries in or adjoining St. Petersburg. The storm pipes in the MS4 owned by St. Petersburg also discharge to these waters.

43. SSOs from the WRFs and WCTS, as well as SSOs that enter the MS4 from the WRFs and WCTS and/or from privately-owned lateral lines, are discharged to Tampa Bay, the Gulf of Mexico, and other water bodies, streams, or tributaries in or adjoining St. Petersburg.

44. Tampa Bay, the Gulf of Mexico, and other water bodies, streams, or tributaries in or adjoining St. Petersburg are waters of the United States, and/or have a significant nexus to waters of the

1 | United States and thus are navigable waters as defined by the Clean Water Act and controlling authority.

45. Tampa Bay is an ecologically sensitive water body and a defining feature of Southwest Florida. Tampa Bay is an important and heavily used resource, with special aesthetic and recreational significance for people living in the surrounding communities. The Tampa Bay shoreline has numerous highly valued beaches and points of public access that offer unique recreational opportunities for swimmers, kayakers, windsurfers, sport fishers and other recreational users. Included amongst these resources are specially recognized and protected waterways such as the Terra Ceia Aquatic Preserve, Boca Ciega Bay Aquatic Preserve, and the Pinellas County Aquatic Preserve, all of which are designated Outstanding Florida Waters, pursuant to 62-302.400 F.A.C., as worthy of special water quality protections because of their natural attributes.

46. SSOs harm Tampa Bay, the Gulf of Mexico, and other water bodies, streams, or tributaries in or adjoining St. Petersburg and pose a serious risk to fisheries, wildlife habitat, and human health. SSOs contain human waste, viruses, protozoa, mold spores and bacteria. In addition, SSOs contain chemicals that cause cancer or reproductive toxicity. These chemicals come from solvents, detergents, cleansers, inks, pesticides, paints, pharmaceuticals, and other chemicals used by households and businesses and then discarded to sewage collection systems. SSOs from the WRFs and WCTS that discharge to Tampa Bay, the Gulf of Mexico, and other waters in or adjoining St. Petersburg, as well as SSOs that enter the MS4 and subsequently flow directly or with storm water to Tampa Bay, the Gulf of Mexico and other waters in or adjoining St. Petersburg, result in the addition of these pollutants to these waters.

47. The intensive use of Tampa Bay and the Gulf of Mexico for commercial and sport fishing, shellfish harvesting, and water-contact recreation increases the likelihood that people will come into direct contact with SSOs and the pollutants they contain. SSOs also affect people who eat fish caught in these waters. Toxic chemicals bio-accumulate in the affected waters' food webs; *i.e.*, contaminants absorbed by plankton accumulate in fish and birds farther up the food chain, and ultimately transfer in higher doses to human consumers.

48. Portions of Tampa Bay and many of its estuaries, channels, and tributaries, which receive St. Petersburg's SSOs, are listed on the State of Florida's 2016 Clean Water Act Section 303(d) list of

impaired water bodies. A water body that is listed as impaired cannot support its designated beneficial uses. The beneficial uses of the waters that receive St. Petersburg's SSOs include habitat support for commercial fishing and sport fishing, estuarine habitat, wildlife habitat, fish migration, fish spawning, preservation of rare and endangered species, shellfish propagation and harvesting, contact and non-contact water recreation, industrial service and agricultural water supply, and navigation. DEP Water Quality Standards 62-302 (2010). Lower and Lower North Tampa Bay are listed as impaired for bacteria (in shellfish). Clam Bayou is listed as impaired for dissolved oxygen, fecal coliform, mercury, and excess nutrients (Chlorophyll-a). Boca Ciega Bay is listed as impaired for fecal coliform and mercury. Booker Creek is listed as impaired for fecal coliform. Several of the tributaries to these bays are also listed as impaired due to excessive levels of various pollutants. Some or all of these pollutants are in St. Petersburg's SSOs.

49. By discharging SSOs and their associated pollutants directly to Tampa Bay, the Gulf of Mexico, and/or its tributaries in violation of the Clean Water Act, as well as discharging SSOs to the MS4 which subsequently flow untreated to Tampa Bay, the Gulf of Mexico, and/or its tributaries, St. Petersburg contributes to the continuing impairment of these waters. As such, St. Petersburg's violations of the Clean Water Act directly harm Plaintiffs' members' use and enjoyment of the Tampa Bay environment.

## IV. STATUTORY AND LEGAL REQUIREMENTS

### A. The Clean Water Act

50. Section 301(a) of the Clean Water Act, 33 U.S.C. §1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge complies with various enumerated sections of the Clean Water Act. Among other things, section 301(a) prohibits discharges not authorized by, or in violation of, the terms of a NPDES permit issued pursuant to section 402 of the Clean Water Act, 33 U.S.C. § 1342.

51. Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p), requires an NPDES Permit for municipal storm water discharges.

52. The MS4 Permit is a NPDES Permit issued by DEP pursuant to section 402 of the Clean Water Act, 33 U.S.C. § 1342. *See* MS4 Permit.

53. Any violation of the MS4 Permit is a violation of the Clean Water Act. *See* 40 C.F.R. § 122.41(a) (2001).

54. Section 505(a) of the Clean Water Act provides for citizen enforcement actions against any "person," for violations of (1) any effluent standard or limitation or (2) an order issued by the Administrator or a State with respect to such a standard or limitation. *See* 33 U.S.C. §§ 1365(a), 1365(f), 1362(5).

55. St. Petersburg is a "person" within the meaning of Clean Water Act section 502(5), 33 U.S.C. § 1362(5).

56. Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), authorizes an action for injunctive relief.

57. Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day per violation for violations occurring from January 12, 2009, to November 2, 2015 and $51,570 per day per violation for violations occurring after November 2, 2015 and assessed on or after August 1, 2016. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4 (2016) (Adjustment of Civil Monetary Penalties for Inflation).

58. Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), permits prevailing or substantially prevailing parties to recover litigation costs, including attorneys' and experts' fees.

### B. The Requirements of the MS4 Permit

59. The MS4 Permit was reissued in 2007 and subsequently amended in 2013.

60. The MS4 Permit contains prohibitions and limitations on the discharge of pollutants into St. Petersburg's MS4.

61. The MS4 Permit requires that St. Petersburg effectively prohibit discharges of non-storm water into its MS4. MS4 Permit, Limitations on Coverage, § I.D.

## V.   FAILURES TO COMPLY WITH LEGAL REQUIREMENTS

### A. St. Petersburg's Unpermitted Discharges of SSOs from the WRFs and WCTS

62. St. Petersburg has discharged and continues to discharge SSOs from the WRFs and WCTS to waters of the United States, and/or into its MS4 that then discharges to waters of the United States without NPDES permit coverage, in violation of section 301(a) of the Clean Water Act, 33 U.S.C.

§ 1311(a) and the MS4 Permit.

63. St. Petersburg has taken inadequate steps to eliminate its violations of the Clean Water Act. Specifically, St. Petersburg has failed to adequately operate, maintain, repair, or update the WRFs and WCTS, thus resulting in SSOs.

64. St. Petersburg's WRFs and WCTS are deteriorating, and deferral of repairs allows the continued discharge of SSOs to waters of the United States in violation of the Clean Water Act.

## VI. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Discharges of SSOs to Waters of the United States Without NPDES Permit Coverage in Violation of the Clean Water Act**

65. Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

66. St. Petersburg has discharged and continues to discharge SSOs from the WRFs and WCTS to waters of the United States, and/or into its MS4 that then discharges to waters of the United States, without NPDES permit coverage.

67. St. Petersburg has discharged SSOs from its WRFs and WCTS to waters of the United States, and/or into its MS4 that then discharges to waters of the United States, on at least 40 separate occasions since September 28, 2011. These days of discharge are listed in Exhibit 1 to the Plaintiffs' citizen suit notice letter that is attached to this Complaint and incorporated by reference.

68. St. Petersburg's discharges of SSOs to waters of the United States, and/or that enter its MS4 that then discharge to waters of the United States, are ongoing and continuous.

69. Each day that a given SSO from the WRFs and WCTS discharges to waters of the United States, and/or that enters St. Petersburg's MS4 that then discharges to waters of the United States, is a separate and distinct violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a).

70. St. Petersburg's violations will continue each occasion it discharges SSOs in violation of the requirements of the Clean Water Act.

71. Significantly more SSOs than those reported by St. Petersburg will likely be discovered through this enforcement action. Each such additional SSO that discharges to waters of the United States

Complaint
11

is a separate Clean Water Act violation.

72. By committing the acts and omissions alleged above, St. Petersburg is subject to an assessment of civil penalties pursuant to Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d), 1365(a), occurring from at least September 28, 2011, to the present.

73. An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

74. An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs and the public, for which harm they have no other plain, speedy, or adequate remedy at law

WHEREFORE, Plaintiffs pray for relief as set forth herein.

## SECOND CAUSE OF ACTION
### Discharges Into the MS4 in Violation of the MS4 Permit and the Clean Water Act

75. Plaintiffs reallege, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

76. St. Petersburg has discharged and continues to discharge SSOs from the WRFs and WCTS into its MS4, in violation of § I.D. of the MS4 Permit.

77. St. Petersburg has discharged SSOs from the WRFs and/or WCTS into its MS4 in violation of the MS4 Permit's discharge prohibitions on at least 17 separate occasions since September 28, 2011. These days of discharge are listed in Exhibit 1 to the Plaintiffs' citizen suit notice letter that is attached to this Complaint and incorporated by reference.

78. St. Petersburg's discharges of SSOs from the WRFs and WCTS into its MS4 in violation of the MS4 Permit's discharge prohibitions are ongoing and continuous.

79. Each discharge of an SSO in violation of the MS4 Permit is a separate and distinct violation of the Clean Water Act.

80. St. Petersburg's violations will continue each occasion it discharges SSOs into its MS4 in violation of the requirements of the MS4 Permit and the Clean Water Act.

81. Significantly more SSOs than reported by St. Petersburg will likely be discovered through this enforcement action. Each such additional SSO that violates the MS4 Permit is a separate

violation of the Clean Water Act.

82. By committing the acts and omissions alleged above, St. Petersburg is subject to an assessment of civil penalties pursuant to Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d), 1365(a), occurring from at least September 28, 2011 to the present.

83. An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

84. An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiffs and the public, for which harm they have no other plain, speedy, or adequate remedy at law.

WHEREFORE, Plaintiffs pray for relief as set forth herein.

## VII. RELIEF REQUESTED

85. Plaintiffs respectfully request that this Court grant the following relief:

    a. declare St. Petersburg to have violated and to be in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for its discharges of SSOs to waters of the United States without a NPDES permit;

    b. declare St. Petersburg to have violated and to be in violation of the Clean Water Act for discharging pollutants without complying with the substantive and procedural requirements of the MS4 Permit;

    d. enjoin St. Petersburg from discharging SSOs to waters of the United States without a NPDES permit, in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a);

    e. enjoin St. Petersburg from violating the substantive and procedural requirements of the Clean Water Act and the MS4 Permit;

    f. assess civil penalties against St. Petersburg of up to $37,500 per day per violation for violations occurring from January 12, 2009, to November 2, 2015 and $51,570 per day per violation for violations occurring after November 2, 2015 and assessed on or after August 1, 2016. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4 (2016) (Adjustment of Civil Monetary Penalties for Inflation).

  g.  award Plaintiffs their reasonable costs of suit, including attorney, witness, and consultant fees, as provided for under by sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365(a); and

  h.  any such other relief as the Court deems appropriate.

Dated: December 2, 2016

*[signature]*

Justin Bloom
Trial Counsel
Florida Bar #89109
Justin Bloom Attorney at Law, PA
P.O. Box 1028
Sarasota, FL 34230
Telephone: (941) 275-2922
Facsimile: (866) 574-2169
Email: bloomesq1@gmail.com

*Attorney for Plaintiffs SUNCOAST WATERKEEPER, OUR CHILDREN'S EARTH FOUNDATION, ECOLOGICAL RIGHTS FOUNDATION*