UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNCOAST WATERKEEPER,
OUR CHILDREN'S EARTH
FOUNDATION, and ECOLOGICAL
RIGHTS FOUNDATION,

    Plaintiffs,

v.                                      Civil Case No.: 8:16-cv-03319-JDW-AEP

CITY OF ST. PETERSBURG,

    Defendant.
_____/

**DEFENDANT, CITY OF ST. PETERSBURG'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFFS' SECOND AMENDED
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Defendant, CITY OF ST. PETERSBURG ("ST. PETERSBURG"), hereby responds to the correspondingly numbered allegations of the Plaintiffs' Second Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties, and alleges as follows:

1) It is admitted that this suit has been brought under the provisions of the Federal Clean Water Act, 33 U.S.C. §§ 1251, *etc.*, ("Clean Water Act" or "CWA"). It is denied that this Court has subject matter jurisdiction over the parties and this action as alleged.

2) It is admitted that on September 28, 2016, the Plaintiffs issued a notice letter to St. Petersburg. It is denied that each of the discharge occurrences identified within the notice letter constitute a violation of the Clean Water Act. With respect to the remaining allegations of paragraph 2, the Defendants are without knowledge as to the veracity of the statements made by Plaintiffs and therefore demand that the Plaintiffs present proof that the events occurred as alleged.

3) Admitted, with respect to the issuance of the notice letter to St. Petersburg. The Defendants are without knowledge as to the veracity of the statements made by Plaintiffs relating to

other notices and therefore demand that the Plaintiffs present proof that the events occurred as alleged.

    4)    Denied.

    5)    Admitted that venue is proper in the Middle District of Florida, Tampa Division.

    6)    It is admitted that the Plaintiffs have alleged violations as characterized in paragraph 6.

    7)    Admitted that SCWK is a non-profit public benefit corporation as described. The Defendant denies the following statement, "SCWK represents its members in and around St. Petersburg and Pinellas County who have personally suffered harm to their aesthetic, recreational, and employment -related interests due to St. Petersburg's sanitary sewer overflows ("SSOs")(*i.e.,* the discharge of raw or inadequately treated sewerage) into Tampa Bay, the Gulf of Mexico, and other water bodies, streams, or tributaries in or adjoining St. Petersburg."

    8)    Admitted.

    9)    Admitted.

    10)    Admitted.

    11)    Denied.

    12)    Denied.

    13)    Admitted, that the plaintiffs have brought this action on behalf of their members. The other factual allegations contained in this paragraph are denied.

    14)    Admitted.

    15)    Admitted.

    16)    Denied.

    17)    Admitted.

    18)    Admitted.

    19)    Admitted.

20) Denied.

21) Admitted.

22) Admitted.

23) Admitted.

24) Denied.

25) Admitted.

26) Admitted.

27) Admitted.

28) The terms of the permit speak for themselves and are incorporated herein by reference in response to paragraph 28.

29) The terms of the permit speak for themselves and are incorporated herein by reference in response to paragraph 29.

30) It is admitted that the MS4 serves the area also served by the WCTS. It is admitted that the MS4 system contains numerous storm drain inlets that are connected by outfall to waters of the United States. Denied that all SSOs that discharge into the MS4 system constitute discharges into the waters of the United States in violation of the Clean Water Act.

31) Denied.

32) It is admitted that the WRF and the WCTS are located in the watershed that drains to Tampa Bay, the Gulf of Mexico, and other water bodies, streams and tributaries in or adjoining St. Petersburg. The storm pipe in the MS4 system owned by St. Petersburg discharged by way of outfall into these waters.

33) It is denied that all discharges into the MS4 system reached the water bodies described.

34) It is admitted that Tampa Bay and the Gulf of Mexico are waters of the United States. It further admitted that other water bodies, streams or tributaries in or adjoining to St. Petersburg may

3

have connections to the waters of the United States. The remaining allegations of paragraph 34 are denied.

35) Admitted.

36) Denied.

37) Denied.

38) Denied.

39) It is admitted that portions of Tampa Bay and other of its estuaries, channels and tributaries which receive St. Petersburg's SSOs, are listed on the state's 2016 Clean Water Act, § 303(d) list of impaired water bodies. The remaining allegations of paragraph 39 are denied.

40) Denied.

41) Denied.

42) Denied.

43) Denied.

44) Denied.

45) Denied.

46) Denied.

47) Denied.

48) Denied.

49) Denied.

50) Denied.

51) Denied.

52) Denied.

53) Admitted.

54) Admitted.

55) Admitted.

56) Denied.

57) Admitted.

58) Admitted.

59) Admitted.

60) Admitted that penalties may be assessed for violation of the Clean Water Act. It is denied that penalties are available to the Plaintiffs for each of the violations alleged.

61) Admitted.

62) Admitted.

63) The content of the MS4 permit is incorporated by reference into this Answer and is incorporated here in response to the allegations of paragraph 63.

64) The content of the MS4 permit is incorporated by reference into this Answer and is incorporated here in response to the allegations of paragraph 64.

65) Admitted.

66) Denied.

67) Admitted.

68) It is admitted that St. Petersburg has discharged SSOs from its WRF and WCTS into its MS4 that then discharged into the waters of the United States. The Defendant denies that all discharges into the MS4 constitute discharges into the waters of the United States. The remaining allegations of paragraph 68 are denied.

69) Denied.

70) Denied.

71) Admitted.

72) Denied.

73) Admitted that those agents may be present, but not always.

74) Denied.

75) Denied.

76) Denied.

77) Denied.

78) Denied.

79) Denied.

80) It is admitted that SSOs have occurred from the WCTS as the result of defects in lines such as excessive line cracking, sags in lines, misaligned joints, broken sewer lines, and pump station equipment failures. The remaining allegations of paragraph 80 are denied.

81) Admitted.

82) It is admitted that the SSOs described in paragraph 82 have occurred during severe wet weather events which are extraordinary and exceed the reasonable design characteristics of the system. The remaining allegations of paragraph 82 are denied.

83) Denied.

84) Denied.

85) Denied.

86) Denied.

87) Denied.

88) Denied.

89) Denied.

90) Denied.

91) It is admitted that Title 28 U.S.C. § 2201 provides for declaratory judgment.

92) Denied.

93) Admitted.

94) Denied.

95) The contents of the MS4 permit are incorporated by reference into this response and the Plaintiffs' Second Amended Complaint, and it is further incorporated in response to paragraph 95; otherwise the allegations of paragraph 95 are denied.

96) The contents of the MS4 permit are incorporated by reference into this Answer and into the Plaintiffs' Second Amended Complaint and by references incorporated in response to the allegations of paragraph 96; otherwise the allegations of the paragraph 96 are denied.

97) The contents of the MS4 permit are incorporated by reference into this Answer and into the Plaintiffs' Second Amended Complaint and by references incorporated in response to the allegations of paragraph 97; the remaining allegations of 97 are denied.

98) Denied

99) Denied.

100) Denied.

101) Denied.

102) Admitted.

103) It is admitted that some of St. Petersburg's SSOs which entered the MS4 system were caused by extraordinary wet weather events which exceeded the reasonable design capacity of the system. It is denied, however, that all such SSOs constitute violations of the Clean Water Act. Further, additional wet weather flows are generated by Satellite systems as the result of groundwater and storm water infiltration into the Satellite systems' wastewater collection systems. The remaining allegations of paragraph 103 are denied.

104) Denied.

105) Denied.

106) Denied.

107) Denied.

108) Denied.

109) Denied.

110) Denied.

111) Denied.

112) Denied.

113) It is admitted that Title 28 U.S.C. § 2201 authorizes declaratory judgment.

114) It is admitted that injunctive relief is authorized by 33 U.S.C. § 1365(a). The remaining allegations of paragraph 114 are denied.

## RELIEF REQUESTED

For the reasons set forth herein the Plaintiffs are not entitled to the relief requested.

115) The Defendant denies that all of the discharges listed on the table attached to the Second Amended Complaint constitute violations of the Clean Water Act.

## FIRST AFFIRMATIVE DEFENSE

The Court is without jurisdiction over this case in that a Consent Order was pursued by the Florida Department of Environmental Protection relating to the same alleged violations addressed in the citizen suit. As such, Plaintiffs fail to state a claim under the CWA, and their citizen suit is precluded by the Section 1319(g)(6)(A)(ii) statutory bar on citizen suits, because the Florida Department of Environmental Protection ("FDEP") has commenced and is diligently prosecuting administrative enforcement actions under a state law "comparable" to the federal Clean Water Act in connection with the allegations in the Complaint. The Court should not issue injunctive relief to the extent that the operation and regulation of the St. Petersburg Wastewater Collection System, Wastewater Reclamation System, Deep Injection Wells, and MS4, collectively the "POWT" system have been undertaken by the Florida Department of Environmental Protection or the EPA. The regulation of the system by those agencies together with the ongoing enforcement action and regulatory oversite are sufficient to address the past violations and assure that violations will not occur in the future. The Court should defer to those agencies to determine the sufficiency of the

remedial action required and the appropriate civil penalties, if any. Allowing a citizen suit to proceed to the award of a civil penalty or injunction would be to expose St. Petersburg to injunctive and punitive relief twice for the same alleged violation of the Clean Water Act. Thus, even if Plaintiffs' entire citizen suit was not barred, the City is entitled to an offset in civil penalties based on the penalties or capital improvement requirements imposed by FDEP's Consent Order for the same violations.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs cannot and have not demonstrated standing in that the State has initiated enforcement proceedings in a comparable action that the Administrator of the EPA could take thereby foreclosing the jurisdiction of the Court and the standing of the Plaintiffs to pursue this matter that is appropriately being pursued by the Florida Department of Environmental Protection.

## THIRD AFFIRMATIVE DEFENSE

Not all wastewater discharges that are received and conveyed by the Defendant's storm water sewer systems, "MS4", are discharges to waters of the United States. Because of in-line storage and treatment capacity, coupled with residency times within the system, some releases do not become discharges of untreated wastewater or discharges at all to waters of the United States and are not therefore violations over which this Court has jurisdiction under the Clean Water Act. Further, not all SSOs identified by the Plaintiffs are discharges to the waters of the United States and therefore do not constitute violations of the Clean Water Act.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs fail to state a claim under the CWA as to some of the incidents alleged by the Plaintiffs to be violations because they cannot establish such incidents constitute a continuing violation or that there is a likelihood of continued violations, and the CWA does not authorize private citizen suits for wholly past violations. There is no reasonable expectation that the violation will be

repeated and accordingly, injunctive relief is improper and unwarranted.  Further, to the extent that there is no likelihood of continued violations with respect to any particular incident, the Court is without jurisdiction to impose penalty or injunctive relief as the violation does not constitute a continuing of the Clean Water Act.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims fail because they are rendered moot by the entry of the Consent Order between the City and FDEP that mandates the payment of penalties and requires the City to take significant corrective and preventative actions within the mandated timelines to adequately address all of the same violations alleged in Plaintiffs' Second Amended Complaint and their underlying causes, and provides for ongoing enforcement to assure that past violations are not repeated in the future.  Additionally, the causes of many of the SSOs identified have been corrected so that the event will not occur on the future. Further, many of the SSOs identified are isolated incidence not likely to reoccur and therefore not a proper basis for a citizen's suit for violations of the Clean Water Act.  To the extent that this Court accepts jurisdiction over this matter and St. Petersburg has been exposed to the payment of civil penalties or the commitment to capital improvement funds designed to address the issues which have caused past violations of the Clean Water Act, St. Petersburg should be given a credit for those funds against any civil penalties assessed herein.

## SIXTH AFFIRMATIVE DEFENSE

Some of the incidents alleged by the Plaintiffs to be violations were the result of Acts of God, such as uncontrollable acts of nature.  That fact should be considered in connection with both the assessment of penalty and imposition of injunctive relief.  Some of the discharges alleged by Plaintiffs were  caused by third parties and to the extent that those third parties have caused alleged violations to occur, then St. Petersburg is not liable for the violation as it could not prevent the discharge and  should not be subjected to penalties and injunctive relief for those violations.  To the extent that the Plaintiffs are pursuing civil penalties and injunctive relief against those Satellite

10

systems that have contributed to the alleged violations, then St. Petersburg should not be subjected to civil penalties and injunctive relief for the same violations. Certain events which led to SSOs described in the Plaintiffs' Complaint as being violations of the Clean Water Act, are excused by DEP and EPA regulations because they are considered exceptional and result in unintentional and temporary non-compliance with applicable effluent limitations due to factors beyond the control of the Defendant, City of St. Petersburg. *See, Florida Administrative Code* Rule 62-620.610(23), 62-620.200(55); 40 C.F.R. § 122.41(n). The City of St. Petersburg has promptly responded in an appropriate fashion in these situations and may not be held liable beyond the corrective measures already taken or agreed to in the Consent Order.

### SEVENTH AFFIRMATIVE DEFENSE

Some, if not all, of Plaintiffs' claims are barred by the doctrine of laches, because Plaintiffs' unexcused delay in filing suit, if the suit were allowed, would be prejudicial to the City.

### EIGHTH AFFIRMATIVE DEFENSE

Some of Plaintiffs' claims are barred by the bypass defense set forth in 40 C.F.R. 122.41(m)(4)(i).

### NINTH AFFIRMATIVE DEFENSE

Even if Plaintiffs' entire citizen suit was not barred, St. Petersburg is entitled to an offset in civil penalties based on the penalties imposed by FDEP's Consent Order for the same violations.

### TENTH AFFIRMATIVE DEFENSE

St. Petersburg is entitled to a reduction in the amount of civil penalties based on the mitigating factors set forth in 33 U.S.C. § 1319(d).

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' lack standing to bring this action because their members have not suffered an "injury-in-fact" which is concrete and particularized and actual or imminent, not conjectural or hypothetical, nor have they established causation or redressability.

**TWELFTH AFFIMAITIVE DEFENSE**

Some of Plaintiffs' claims are barred by the five-year statute of limitations as set forth in 28 U.S.C. § 2462.  As such, any violations complained of by the Plaintiffs which occurred five years before the notice of the violations was filed with the Environmental Protection Agency are time barred.

**THIRTEENTH AFFIRMATIVE DEFENSE**

To the extent that the Plaintiffs have claimed violations related to the MS4 system and those discharges identified were in compliance with St. Petersburg's NPDES No. FLS000007-004, those discharges are not the proper action for citizen suits and accordingly, claims for those violations should be denied.

**FOURTEENTH AFFIRMATIVE DEFENSE**

This Court should not grant injunctive relief as requested as regulation of the POWT system by the Florida Department of Environmental Protection and the EPA and not the Court is in the public interest.

**FIFTEENTH AFFIRMATIVE DEFENSE**

To the extent that an SSO identified by the Plaintiffs as a violation of the Clean Water Act has not discharged pollutants into the waters of the United States, no violation of the Clean Water Act has occurred and the Court is without jurisdiction and Defendant is without liability under the Act.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Some of the SSOs identified by the Plaintiffs occurred as the result of the conduct of third parties which was beyond the control of the Defendant, St. Petersburg.  These include, excess flows from Satellite systems due to defects within those systems which allow stormwater and groundwater to enter the sanitary collection systems within those Satellites which in turn was delivered to the St. Petersburg system.  Additionally, within the St. Petersburg system, damage caused accidently or intentionally to the system by third parties may have resulted in the release of wastewater.  St. Petersburg may not appropriately be held liable or accountable for such events. Additionally, to the extent that said third parties contributed to any particular violation then that fact should be taken into consideration in the assessment of penalties in the imposition of injunctive relief.  Further, to the extent that those events are not likely to reoccur they should not provide a basis for Clean Water Act enforcement by citizen suit.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of June, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on:  **Justin Bloom** (bloomesq1@gmail.com); **Christopher Sproul,** *pro hac vice* (csproul@enviroadvocates.com); and **Fredric Evenson,** *pro  hac vice* (evenson@ecologylaw.com), Attorneys for Plaintiffs via transmission of Notices of Electronic Filing generated by CM/ECF.

                                              */s/ Brian A. Bolves*
                                              Brian A. Bolves, FBN 367079
                                              William S. Bilenky, FBN 154709
                                              Paria Shirzadi, FBN 99158
                                              Manson Bolves Donaldson Varn, P.A.
                                              1101 W. Swann Avenue
                                              Tampa, FL 33606
                                              P:        813.514.4700
                                              F:        813.514.4701
                                              E:        bbolves@mansonbolves.com
                                                               bbilenky@mansonbolves.com
                                                               pshirzadi@mansonbolves.com
                                                               dcantwell@mansonbolves.com