Exhibit 7

to the

Declaration of Kathryn Schmidt

In Support of

Plaintiffs' Motion for Attorneys'
Fees and Costs

Suncoast Waterkeeper et al. v. City of St.
Petersburg Case No. 8:16-cv-03319-JDW-AEP

# U.S. District Court
## Middle District of Florida (Tampa)
## CIVIL DOCKET FOR CASE #: 8:16-cv-03319-JDW-AEP

Suncoast Waterkeeper et al v. City of St. Petersburg
Assigned to: Judge James D. Whittemore
Referred to: Magistrate Judge Anthony E. Porcelli
Cause: 33:1319 Clean Water Act

Date Filed: 12/02/2016
Date Terminated: 12/17/2018
Jury Demand: None
Nature of Suit: 893 Environmental Matters
Jurisdiction: Federal Question

| Date Filed | # | Docket Text |
|---|---|---|
| 12/02/2016 | 1 | STRICKEN, PURSUANT TO ORDER 3 COMPLAINT against City of St. Petersburg (Filing fee $ 400 receipt number TPA040489) filed by Suncoast Waterkeeper, Our Children's Earth Foundation, Ecological Rights Foundation. (Attachments: # 1 Exhibit, # 2 Civil Cover Sheet)(CTR) Modified on 12/6/2016 (DG). (Entered: 12/02/2016) |
| 12/02/2016 | 2 | SUMMONS issued as to City of St. Petersburg. (CTR) (Entered: 12/02/2016) |
| 12/05/2016 | 3 | **ORDER striking 1 Complaint filed by Our Children's Earth Foundation, Ecological Rights Foundation, Suncoast Waterkeeper. Signed by Judge James D. Whittemore on 12/5/2016. (AO)** (Entered: 12/05/2016) |
| 12/07/2016 | 4 | AMENDED COMPLAINT against All Defendants filed by All Plaintiffs. (Attachments: # 1 Exhibit Exhibit 1)(Bloom, Justin) (Entered: 12/07/2016) |
| 12/09/2016 | 5 | NOTICE of *Appearance* Appearance by Brian Alexander Bolves on behalf of City of St. Petersburg (Bolves, Brian) (Entered: 12/09/2016) |
| 12/21/2016 | 6 | NOTICE of designation under Local Rule 3.05 - Track 2 (AO) (Entered: 12/21/2016) |
| 12/28/2016 | 7 | MOTION to Dismiss Plaintiff's Amended Complaint by City of St. Petersburg. (Bolves, Brian) (Entered: 12/28/2016) |
| 01/05/2017 | 8 | Unopposed MOTION for Fredric Evenson to appear pro hac vice by All Plaintiffs. (Attachments: # 1 Certificate of Good Standing)(Bloom, Justin) (Entered: 01/05/2017) |
| 01/05/2017 | 9 | Unopposed MOTION for Christopher Sproul to appear pro hac vice by All Plaintiffs. (Attachments: # 1 Certificate of Good Standing)(Bloom, Justin) (Entered: 01/05/2017) |
| 01/09/2017 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Frederic Evenson, appearing on behalf of Ecological Rights Foundation (Filing fee $150 receipt number TPA041121) Related document: 8 Unopposed MOTION for Fredric Evenson to appear pro hac vice. (AG) (Entered: 01/09/2017) |
| 01/09/2017 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Christopher Sproul, appearing on behalf of Our Children's Earth Foundation (Filing fee $150 receipt number TPA041120) Related document: 9 Unopposed MOTION for Christopher Sproul to appear pro hac vice. (AG) (Entered: 01/09/2017) |
| 01/10/2017 | 10 | **ENDORSED ORDER granting 8 motion to appear pro hac vice and 9 motion to appear pro hac vice. Written order to follow.Signed by Judge James D. Whittemore on 1/10/2017. (Whittemore, James)** (Entered: 01/10/2017) |

| 01/10/2017 | 11 | **ENDORSED ORDER granting 9 motion to appear pro hac vice. Signed by Judge James D. Whittemore on 1/10/2017. (Whittemore, James)** (Entered: 01/10/2017) |
|---|---|---|
| 01/10/2017 | 12 | **ORDER granting 9 Unopposed MOTION for Christopher Sproul to appear pro hac vice. Signed by Judge James D. Whittemore on 1/10/2017. (SMA)** (Entered: 01/10/2017) |
| 01/10/2017 | 13 | **ORDER granting 8 Unopposed MOTION for Fredric Evenson to appear pro hac vice. Signed by Judge James D. Whittemore on 1/10/2017. (SMA)** (Entered: 01/10/2017) |
| 01/11/2017 | 14 | MOTION for leave to file *Second Amended Complaint* by All Plaintiffs. (Attachments: # 1 Exhibit Second Amended Complaint)(Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 15 | RESPONSE in Opposition re 7 MOTION to Dismiss Plaintiff's Amended Complaint filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 16 | DECLARATION of Joseph McClash re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 17 | DECLARATION of Andrew Hayslip re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 18 | DECLARATION of John Rice re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 19 | DECLARATION of Donal Robert Alfieri re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 20 | DECLARATION of Eliza Epstein re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 21 | DECLARATION of Jill Wenner re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 22 | DECLARATION of Sandra Ripberger re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 23 | DECLARATION of Michael Sullivan re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 24 | DECLARATION of Annaliese Beaman re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 25 | DECLARATION of Rachel Rosner re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 26 | DECLARATION of Elizabeth Forys re 15 Response in Opposition to Motion by |

| | | |
|---|---|---|
| | | Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 27 | DECLARATION of Lee Irby re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 01/11/2017) |
| 01/11/2017 | 28 | DECLARATION of Christopher Sproul re 15 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bloom, Justin) (Entered: 01/11/2017) |
| 01/16/2017 | 29 | NOTICE of compliance *with CM/ECF registration and notice of appearance* by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Sproul, Christopher) (Entered: 01/16/2017) |
| 01/17/2017 | 30 | APPEARANCE of non-resident counsel and designation of local counsel by Frederic Evenson on behalf of All Plaintiffs. Local Counsel: No. Non-Resident Counsel: Yes. (Evenson, Frederic) (Entered: 01/17/2017) |
| 01/18/2017 | 31 | NOTICE of pendency of related cases re 6 Notice of designation of track *Two* per Local Rule 1.04(d) by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. Related case(s): yes (Bloom, Justin) (Entered: 01/18/2017) |
| 01/20/2017 | 32 | CASE MANAGEMENT REPORT. (Bloom, Justin) Counsel notified by telephone on 1/23/17 that this item to be refiled with defendant's counsel's signature. Item terminated due to the filing of 33 . Modified on 1/23/2017 (DG). Modified on 1/23/2017 (DG). (Entered: 01/20/2017) |
| 01/23/2017 | 33 | CASE MANAGEMENT REPORT. (Bloom, Justin) (Entered: 01/23/2017) |
| 01/25/2017 | 34 | NOTICE by City of St. Petersburg *of Non-Objection to Filing Plaintiffs' Second Amended Complaint* (Bolves, Brian) (Entered: 01/25/2017) |
| 01/26/2017 | 35 | **ENDORSED ORDER granting 14 Plaintiffs' Motion for Leave to File Second Amended Complaint. The motion is unopposed (Dkt. 34). The Clerk is directed to docket the proposed Second Amended Complaint (Dkt. 14-1) as Plaintiffs' Second Amended Complaint. Defendant shall respond to the Second Amended Complaint within 14 days. Signed by Judge James D. Whittemore on 1/26/2017. (Whittemore, James)** (Entered: 01/26/2017) |
| 01/26/2017 | 36 | **ENDORSED ORDER denying as moot 7 motion to dismiss. Signed by Judge James D. Whittemore on 1/26/2017. (Whittemore, James)** (Entered: 01/26/2017) |
| 01/26/2017 | 37 | **CASE MANAGEMENT AND SCHEDULING ORDER: Pretrial Conference set for 5/4/2018 at 10:00 AM, Bench Trial set for 6/4/2018 at 08:45 AM in Tampa Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 1/26/2017. (LD)** (Entered: 01/26/2017) |
| 01/26/2017 | 87 | SECOND AMENDED COMPLAINT against City of St. Petersburg filed by Suncoast Waterkeeper, Our Children's Earth Foundation, Ecological Rights Foundation. Related document: 4 Amended Complaint filed by Our Children's Earth Foundation, Ecological Rights Foundation, Suncoast Waterkeeper.(DG) (Entered: 06/12/2017) |
| 02/06/2017 | 38 | MOTION to Dismiss Second Amended Complaint *for Lack of Standing* by City of St. Petersburg. (Bolves, Brian) (Entered: 02/06/2017) |
| 02/13/2017 | 39 | MOTION to quash Subpoena by City of Treasure Island. (Attachments: # 1 Exhibit Subpoena to Produce, # 2 Exhibit Affidavit)(Jensen, Jeffrey) (Entered: 02/13/2017) |

| 02/13/2017 | [40](#) | MOTION to quash Subpoena *to Produce Documents* by City of Gulfport. (Beilman, Vincent) (Entered: 02/13/2017) |
| --- | --- | --- |
| 02/14/2017 | 41 | **ENDORSED ORDER referring motions to Magistrate Judge for disposition: [40](#) MOTION to quash Subpoena *to Produce Documents* filed by City of Gulfport, [39](#) MOTION to quash Subpoena filed by City of Treasure Island. Signed by Judge James D. Whittemore on 2/14/2017. (JJB) Motions referred to Magistrate Judge Anthony E. Porcelli.** (Entered: 02/14/2017) |
| 02/14/2017 | [42](#) | Unopposed MOTION to Consolidate Cases , Unopposed MOTION to transfer case by City of St. Petersburg. (Beilman, Vincent) (Entered: 02/14/2017) |
| 02/15/2017 | [43](#) | **ORDER Setting Hearing on [42](#) Unopposed Motion to Transfer and Consolidate Related Cases: Motion Hearing set for 2/22/2017 at 01:30 PM in Tampa Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 2/15/2017. (JJB)** (Entered: 02/15/2017) |
| 02/16/2017 | [44](#) | **ORDER STAYING production sought by the subpoenas at issue in the motions to quash [39, 40] until further Order of this Court and scheduling a hearing on the motions. See Order for details. Signed by Magistrate Judge Anthony E. Porcelli on 2/16/2017. (JMF)** (Entered: 02/16/2017) |
| 02/16/2017 | 45 | NOTICE of hearing on motion re [40](#) MOTION to quash Subpoena *to Produce Documents*, [39](#) MOTION to quash Subpoena. Motion Hearing set for 3/1/2017 at 02:00 PM in Tampa Courtroom 10 A before Magistrate Judge Anthony E. Porcelli. (JMF) (Entered: 02/16/2017) |
| 02/17/2017 | [46](#) | NOTICE by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper re [42](#) Unopposed MOTION to Consolidate Cases Unopposed MOTION to transfer case *Notice of Non-Opposition* (Bloom, Justin) (Entered: 02/17/2017) |
| 02/17/2017 | [47](#) | STIPULATION re [40](#) MOTION to quash Subpoena *to Produce Documents RESOLVING CITY OF GULFPORT'S MOTION TO QUASH SUBPOENA* by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 02/17/2017) |
| 02/17/2017 | [48](#) | NOTICE by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper *of DESIGNATION OF LEAD COUNSEL* (Bloom, Justin) (Entered: 02/17/2017) |
| 02/17/2017 | [49](#) | Unopposed MOTION to Appear Telephonically by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 02/17/2017) |
| 02/21/2017 | 50 | **ENDORSED ORDER denying as moot [40](#) Motion to Quash. The motion has been withdrawn [47](#) . Signed by Magistrate Judge Anthony E. Porcelli on 2/21/2017. (JMF)** (Entered: 02/21/2017) |
| 02/21/2017 | 51 | **ENDORSED ORDER granting [49](#) Motion to Appear Telephonically. Plaintiffs' counsel shall contact the Courtroom Deputy (813-301-5886) to make arrangements to appear by telephone. Signed by Judge James D. Whittemore on 2/21/2017. (JJB)** (Entered: 02/21/2017) |
| 02/21/2017 | [52](#) | RESPONSE in Opposition re [42](#) Unopposed MOTION to Consolidate Cases Unopposed MOTION to transfer case filed by City of St. Petersburg. (Bolves, Brian) (Entered: 02/21/2017) |
| 02/21/2017 | [53](#) | RESPONSE in Opposition re [38](#) MOTION to Dismiss Second Amended Complaint *for Lack of Standing* filed by Ecological Rights Foundation, Our Children's Earth |

| | | Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 02/21/2017) |
|---|---|---|
| 02/22/2017 | 54 | MOTION for summary judgment *and Memorandum in Support* by City of St. Petersburg. (Attachments: # 1 Appendix to City of St. Petersburg's Motion for Summary Judgment and Memorandum in Support)(Bolves, Brian) (Entered: 02/22/2017) |
| 02/22/2017 | 56 | Minute Entry. Proceedings held before Judge James D. Whittemore: MOTION HEARING held on 2/22/2017 re 42 Unopposed MOTION to Consolidate Cases Unopposed MOTION to transfer case filed by City of St. Petersburg. Court Reporter: Lynann Nicely (LD) (Entered: 02/23/2017) |
| 02/23/2017 | 55 | **ORDER denying without prejudice 42 Motion to Transfer and Consolidate Related Cases. Signed by Judge James D. Whittemore on 2/22/2017. (JJB)** (Entered: 02/23/2017) |
| 02/24/2017 | 57 | Unopposed MOTION to Appear Telephonically by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 02/24/2017) |
| 02/24/2017 | 58 | **ENDORSED ORDER granting 57 Motion to Appear Telephonically. Attorney Christopher Sproul may appear telephonically at the hearing scheduled for 03/01/2017 by calling toll-free number 1-888-684-8852 on the day of the hearing and entering access code 8895301 followed by security code 0301 when prompted. Signed by Magistrate Judge Anthony E. Porcelli on 2/24/2017. (JMF)** (Entered: 02/24/2017) |
| 02/27/2017 | 59 | RESPONSE in Opposition re 39 MOTION to quash Subpoena filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Bloom Declaration, # 2 Exhibit 1 to Bloom Declaration, # 3 Exhibit 2 to Bloom Declaration, # 4 Exhibit 3 to Bloom Declaration, # 5 Exhibit 4 to Bloom Declaration, # 6 Exhibit 5 to Bloom Declaration, # 7 Exhibit 6 to Bloom Declaration, # 8 Exhibit 7 to Bloom Declaration, # 9 Beamon Declaration, # 10 Lamport Declaration)(Bloom, Justin) (Entered: 02/27/2017) |
| 03/01/2017 | 60 | **ENDORSED ORDER denying 39 Motion to Quash for the reasons stated at the hearing. If the parties cannot resolve the process for production, as discussed at the hearing, either party may contact the undersigned's chambers at 813-301-5541 to schedule a telephonic hearing. Signed by Magistrate Judge Anthony E. Porcelli on 3/1/2017. (JMF)** (Entered: 03/01/2017) |
| 03/01/2017 | 61 | Minute Entry. Proceedings held before Magistrate Judge Anthony E. Porcelli: MOTION HEARING held on 3/1/2017 re 39 MOTION to quash Subpoena filed by City of Treasure Island. (digital) (LV) (Entered: 03/01/2017) |
| 03/07/2017 | 62 | NOTICE to the Courts to take judicial notice regarding *Records of the Florida Department of Environmental Protection* by City of St. Petersburg. (Bolves, Brian) (Entered: 03/07/2017) |
| 03/07/2017 | 63 | MOTION for leave to file *Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss* by City of St. Petersburg. (Bolves, Brian) (Entered: 03/07/2017) |
| 03/07/2017 | 64 | **ENDORSED ORDER granting 63 Motion for Leave to File to the extent that Defendant may file a reply brief of five (5) pages including signature page and certificates, without footnotes, by 03/15/2017. Signed by Judge James D. Whittemore on 3/7/2017. (JJB)** (Entered: 03/07/2017) |
| 03/09/2017 | 65 | MEMORANDUM in opposition re 54 Motion for summary judgment filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Declaration of Christopher Sproul)(Bloom, Justin) (Entered: 03/09/2017) |

| 03/09/2017 | 66 | SUPPLEMENT re 65 Memorandum in opposition *Supplemental Declaration* by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Exhibit 1)(Sproul, Christopher) (Entered: 03/09/2017) |
|---|---|---|
| 03/10/2017 | 67 | RESPONSE in Opposition re 54 MOTION for summary judgment *and Memorandum in Support CORRECTION OF DOCKET # 65 , [65-1]* filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Affidavit Corrected Declaration of C. Sproul)(Sproul, Christopher) (Entered: 03/10/2017) |
| 03/10/2017 | 68 | TRANSCRIPT of Motion Hearing held on 03/01/17 before Judge Anthony E. Porcelli. Court Reporter/Transcriber Bill Jones,Telephone number 813-301-5024. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 3/31/2017, Redacted Transcript Deadline set for 4/10/2017, Release of Transcript Restriction set for 6/8/2017. (HWJ) (Entered: 03/10/2017) |
| 03/10/2017 | 69 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal. Court Reporter: Bill Jones. (HWJ) (Entered: 03/10/2017) |
| 03/13/2017 | 70 | MEMORANDUM in opposition re 62 Notice to take judicial notice filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 03/13/2017) |
| 03/14/2017 | 71 | MOTION for leave to file Defendant's Motion for Leave to File Reply to Plaintiffs' Objection to Defendant's Motion for Summary Judgment by City of St. Petersburg. (Bolves, Brian) (Entered: 03/14/2017) |
| 03/15/2017 | 72 | Joint MOTION for leave to file REPLY BRIEFS by All Plaintiffs. (Bloom, Justin) (Entered: 03/15/2017) |
| 03/15/2017 | 73 | **ENDORSED ORDER denying without prejudice 71 Motion for Leave to File Reply for failure to comply with Local Rule 3.01(d). Signed by Judge James D. Whittemore on 3/15/2017. (JJB)** (Entered: 03/15/2017) |
| 03/15/2017 | 74 | REPLY to Response to Motion re 63 MOTION for leave to file *Reply to Plaintiffs' Opposition to Defendant's Motion to Dismiss for Lack of Standing* filed by City of St. Petersburg. (Bolves, Brian) (Entered: 03/15/2017) |
| 03/16/2017 | 75 | **ORDER denying 72 Joint Motion for Entry of Stipulated Order allowing Reply Briefs. Signed by Judge James D. Whittemore on 3/16/2017. (JJB)** (Entered: 03/16/2017) |
| 03/16/2017 | 76 | MOTION for leave to file Second Request for Leave to File Reply to Plaintiffs' Opposition to CITY'S Motion for Summary Judgment by City of St. Petersburg. (Bolves, Brian) (Entered: 03/16/2017) |
| 03/16/2017 | 77 | RESPONSE to Motion re 76 MOTION for leave to file Second Request for Leave to File Reply to Plaintiffs' Opposition to CITY'S Motion for Summary Judgment filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 03/16/2017) |
| 03/16/2017 | 78 | **ENDORSED ORDER denying 76 City of St. Petersburg's Second Request for Leave** |

| | | |
|---|---|---|
| | | to File Reply. **Signed by Judge James D. Whittemore on 3/16/2017. (Whittemore, James)** (Entered: 03/16/2017) |
| 03/17/2017 | 79 | NOTICE to the Courts to take judicial notice regarding by City of St. Petersburg. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Bolves, Brian) (Entered: 03/17/2017) |
| 03/22/2017 | 80 | MEMORANDUM in opposition re 79 Notice to take judicial notice filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Sproul, Christopher) (Entered: 03/22/2017) |
| 05/02/2017 | 81 | NOTICE of supplemental authority re 53 Response in Opposition to Motion *to Dismiss* by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Supplement Reported Opinion)(Bloom, Justin) (Entered: 05/02/2017) |
| 05/16/2017 | 82 | STIPULATION *of the Parties* by City of St. Petersburg. (Bolves, Brian) (Entered: 05/16/2017) |
| 05/17/2017 | 83 | **ORDER withdrawing 38 Defendant City of St. Petersburg's Rule 12(b)(6) Motion to Dismiss Second Amended Complaint for Lack of Standing pursuant to the Stipulation of the Parties. Signed by Judge James D. Whittemore on 5/17/2017. (JJB)** (Entered: 05/17/2017) |
| 05/30/2017 | 84 | STIPULATION re 37 Case management and scheduling order *selection of mediator* by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 05/30/2017) |
| 06/06/2017 | 85 | STRICKEN, PURSUANT TO ORDER 88 ANSWER and affirmative defenses to 4 Amended Complaint by City of St. Petersburg.(Bolves, Brian) Modified on 6/12/2017 (DG). (Entered: 06/06/2017) |
| 06/09/2017 | 86 | MOTION for Extension of Time to File Answer *to Plaintiffs' Second Amended Complaint* by City of St. Petersburg. (Bolves, Brian) (Entered: 06/09/2017) |
| 06/12/2017 | 88 | **ORDER granting 86 Defendant, City of St. Petersburg's Motion for Extension of Time Within Which to File Answer to Plaintiffs' Second Amended Complaint. Defendant's answer or response due 6/16/2017. The 85 Answer that was incorrectly filed by Defendant is STRICKEN. Signed by Judge James D. Whittemore on 6/12/2017. (JJB)** (Entered: 06/12/2017) |
| 06/14/2017 | 89 | ANSWER to 87 Amended Complaint by City of St. Petersburg.(Bolves, Brian) (Entered: 06/14/2017) |
| 07/05/2017 | 90 | MOTION to Strike 89 Answer to amended complaint by All Plaintiffs. (Evenson, Fredric) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 07/05/2017) |
| 07/19/2017 | 91 | RESPONSE to Motion re 90 MOTION to Strike 89 Answer to amended complaint filed by City of St. Petersburg. (Bolves, Brian) (Entered: 07/19/2017) |
| 08/21/2017 | 92 | Joint MOTION to modify Case Management and Scheduling Order by All Plaintiffs. (Bloom, Justin) (Entered: 08/21/2017) |
| 08/22/2017 | 93 | **ORDER granting 92 Joint Motion for Entry of Stipulated Order Modifying Case Management and Scheduling Order. Signed by Judge James D. Whittemore on 8/22/2017. (JJB)** (Entered: 08/22/2017) |
| 09/01/2017 | 94 | **ORDER Setting Hearing on Motion: 54 Defendant's Motion for Summary Judgment and Memorandum in Support. Hearing set for 9/18/2017 at 03:00 PM in** |

| | | Tampa Courtroom 13 B before Judge James D. Whittemore. Signed by Judge James D. Whittemore on 9/1/2017. (JJB) (Entered: 09/01/2017) |
|---|---|---|
| 09/05/2017 | 95 | MOTION to Continue *Oral Argument on Motion for Summary Judgment Set for September 18, 2017* by City of St. Petersburg. (Bolves, Brian) (Entered: 09/05/2017) |
| 09/06/2017 | 96 | **ORDER granting 95 Defendant's Unopposed Motion to Continue Hearing Scheduled for September 18, 2017; deferring ruling on 54 Defendant's Motion for Summary Judgment. The oral argument on 54 Defendant's Motion for Summary Judgment is rescheduled for Thursday, September 28, 2017 at 11:00 A.M. in Courtroom 13B of the Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, FL 33602. Signed by Judge James D. Whittemore on 9/6/2017. (JJB)** (Entered: 09/06/2017) |
| 09/06/2017 | | Set/reset deadlines/hearings: Motion Hearing set for 9/28/2017 at 11:00 AM in Tampa Courtroom 13 B before Judge James D. Whittemore. (DG) (Entered: 09/06/2017) |
| 09/08/2017 | 97 | TRANSCRIPT of Motion Hearing held on 2/22/2017 before Judge Whittemore. Court Reporter Lynann Nicely,Telephone number (813) 301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/29/2017, Redacted Transcript Deadline set for 10/10/2017, Release of Transcript Restriction set for 12/7/2017. (LN) (Entered: 09/08/2017) |
| 09/08/2017 | 98 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal. Court Reporter: Lynann Nicely. (LN) (Entered: 09/08/2017) |
| 09/12/2017 | 99 | Joint MOTION to Continue *Hearing Scheduled for September 28, 2017* by All Plaintiffs. (Bloom, Justin) (Entered: 09/12/2017) |
| 09/13/2017 | 100 | **ORDER granting 99 Joint Motion to Continue Hearing Scheduled for September 28, 2017. The oral argument on 54 Defendant's Motion for Summary Judgment is rescheduled to Thursday, October 19, 2017 at 11:00 A.M. in Courtroom 13B of the Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, FL 33602. Signed by Judge James D. Whittemore on 9/13/2017. (JJB)** (Entered: 09/13/2017) |
| 09/13/2017 | | Reset deadlines/hearings: Motion Hearing set for 10/19/2017 at 11:00 AM in Tampa Courtroom 13 B before Judge James D. Whittemore. (DG) (Entered: 09/13/2017) |
| 09/29/2017 | 101 | MOTION for partial summary judgment by All Plaintiffs. (Bloom, Justin) (Entered: 09/29/2017) |
| 09/29/2017 | 102 | DECLARATION of Molly Coyne re 101 MOTION for partial summary judgment by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Exhibit A, # 2 Exhibit A(1), # 3 Exhibit A(2), # 4 Exhibit A(3), # 5 Exhibit A(4), # 6 Exhibit A(5), # 7 Exhibit A(6), # 8 Exhibit A(7), # 9 Exhibit A(8), # 10 Exhibit A(9), # 11 Exhibit A(10), # 12 Exhibit A(11), # 13 Exhibit B, # 14 Exhibit C, # 15 Exhibit D, # 16 Exhibit E, # 17 Exhibit F, # 18 Exhibit G)(Bloom, Justin) (Entered: 09/29/2017) |
| 10/02/2017 | 103 | MEDIATION report Hearing held on September 28, 2017. Hearing outcome: Impasse.. |

| | | (Wilcox, John) (Entered: 10/02/2017) |
|---|---|---|
| 10/02/2017 | 104 | Notice of Filing MOTION to Consolidate Cases by City of Gulfport, in related case 8:17cv35-T-24. (Beilman, Vincent) Modified on 10/3/2017 (DG). (Entered: 10/02/2017) |
| 10/02/2017 | 105 | DECLARATION of Emil A. Macasinag by City of Gulfport. (Attachments: # 1 Exhibit A - Hearing Transcript, # 2 Exhibit B - Correspondence, # 3 Exhibit C - Correspondence) (Beilman, Vincent) (Entered: 10/02/2017) |
| 10/02/2017 | 106 | MOTION to stay *Proceedings Pending Outcome of Administrative Proceedings Relating to FDEP Consent Order* by City of St. Petersburg. (Bolves, Brian) (Entered: 10/02/2017) |
| 10/03/2017 | 107 | DECLARATION of by City of St. Petersburg. (Attachments: # 1 Exhibit Certified Consent Order, # 2 Exhibit Certified Verified Petition of Plaintiff)(Bolves, Brian) (Entered: 10/03/2017) |
| 10/13/2017 | 108 | Unopposed MOTION to Appear Telephonically by All Plaintiffs. (Bloom, Justin) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 10/13/2017) |
| 10/16/2017 | 109 | **ORDER granting 108 Unopposed Motion to Appear by Telephone. Signed by Judge James D. Whittemore on 10/16/2017. (JJB)** (Entered: 10/16/2017) |
| 10/16/2017 | 110 | RESPONSE in Opposition re 106 MOTION to stay *Proceedings Pending Outcome of Administrative Proceedings Relating to FDEP Consent Order* filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 10/16/2017) |
| 10/16/2017 | 111 | DECLARATION of Justin Bloom re 110 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M)(Bloom, Justin) (Entered: 10/17/2017) |
| 10/19/2017 | 112 | Minute Entry. Proceedings held before Judge James D. Whittemore: ORAL ARGUMENT held on 10/19/2017 re: 54 Defendant's Motion for Summary Judgment *and Memorandum in Support* filed by City of St. Petersburg. Court Reporter: Lynann Nicely (CAB) . (Entered: 10/19/2017) |
| 10/20/2017 | 113 | MOTION for leave to file *Supplemental Authority* by City of St. Petersburg. (Attachments: # 1 Appendix, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit)(Bolves, Brian) (Entered: 10/20/2017) |
| 10/30/2017 | 114 | MOTION for partial summary judgment *and Memorandum in Support* by City of St. Petersburg. (Attachments: # 1 Exhibit Table 1, # 2 Exhibit Table 1, # 3 Exhibit Declaration of Lane Longley, # 4 Exhibit Declaration of Charles Wise)(Bolves, Brian) (Entered: 10/30/2017) |
| 11/01/2017 | 115 | **ENDORSED ORDER granting 113 Defendant's Motion for Leave to File Supplemental Authority. Signed by Judge James D. Whittemore on 11/1/2017. (JJB)** (Entered: 11/01/2017) |
| 11/01/2017 | 116 | MOTION for leave to file RESPONSE TO DEFENDANT'S SUPPLEMENTAL AUTHORITY by All Plaintiffs. (Bloom, Justin) (Entered: 11/01/2017) |
| 11/02/2017 | 117 | **ORDER granting in part and denying in part 116 Plaintiffs' Motion for Leave to File Response to Defendant's Supplemental Authority. Signed by Judge James D. Whittemore on 11/2/2017. (JJB)** (Entered: 11/02/2017) |
| 11/13/2017 | 118 | RESPONSE in Opposition re 114 MOTION for partial summary judgment *and Memorandum in Support* filed by Ecological Rights Foundation, Our Children's Earth |

| | | |
|---|---|---|
| | | Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 11/13/2017) |
| 11/13/2017 | 119 | DECLARATION of Molly Coyne re 118 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2.1, # 3 Exhibit 2.2, # 4 Exhibit 2.3, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10)(Bloom, Justin) (Entered: 11/14/2017) |
| 11/14/2017 | 120 | MOTION to Strike *EVIDENCE OFFERED IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT* by All Plaintiffs. (Bloom, Justin) Motions referred to Magistrate Judge Anthony E. Porcelli. (Entered: 11/14/2017) |
| 11/20/2017 | 121 | MOTION for leave to file to File Reply to Plaintiffs' Response to City of St. Petersburg's Motion for Partial Summary Judgment by City of St. Petersburg. (Bolves, Brian) (Entered: 11/20/2017) |
| 11/21/2017 | 122 | **ENDORSED ORDER denying without prejudice 121 Defendant's Motion for Leave to File a Reply to Plaintiffs' Response to City of St. Petersburg's Motion for Partial Summary Judgment for failure to comply with Local Rule 3.01(d) by exceeding three (3) pages and failing to specify the length of the proposed filing. Signed by Judge James D. Whittemore on 11/21/2017. (JJB)** (Entered: 11/21/2017) |
| 11/22/2017 | 123 | RESPONSE to Motion re 120 MOTION to Strike *EVIDENCE OFFERED IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT* filed by City of St. Petersburg. (Bolves, Brian) (Entered: 11/22/2017) |
| 11/22/2017 | 124 | Amended MOTION for leave to file to File Reply to Plaintiffs' Response to CITY'S Motion for Partial Summary Judgment by City of St. Petersburg. (Bolves, Brian) (Entered: 11/22/2017) |
| 11/22/2017 | 125 | MOTION to Amend/Correct *Modified Case Management Order* by City of St. Petersburg. (Bolves, Brian) (Entered: 11/22/2017) |
| 11/28/2017 | 126 | RESPONSE in Opposition re 125 MOTION to Amend/Correct *Modified Case Management Order* filed by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 11/28/2017) |
| 01/10/2018 | 127 | **ORDER directing Plaintiffs to provide courtesy copies of 119 Declaration of Molly Coyne in Opposition to Defendant's Second Motion for Summary Judgment and in Support of Plaintiffs' Motion to Strike and all exhibits, 111 Declaration of Justin Bloom in Support of Plaintiffs' Opposition to Motion to Stay and all exhibits, and 102 Declaration of Molly Coyne in Support of Plaintiffs' Motion for Partial Summary Judgment and all exhibits within seven (7) days. Signed by Judge James D. Whittemore on 1/10/2018. (JJB)** (Entered: 01/10/2018) |
| 01/10/2018 | 128 | **ENDORSED ORDER denying 124 City of St. Petersburg's Amended Motion for Leave to File a Reply to Plaintiffs' Response to City of St. Petersburg's Motion for Partial Summary Judgment. Signed by Judge James D. Whittemore on 1/10/2018. (JJB)** (Entered: 01/10/2018) |
| 01/11/2018 | 129 | Joint MOTION to modify *EXPERT DISCLOSURE DATE IN CASE MANAGEMENT AND SCHEDULING ORDER* by All Plaintiffs. (Bloom, Justin) (Entered: 01/11/2018) |
| 01/17/2018 | 130 | **ORDER granting 129 Joint Motion for Entry of Stipulated Order Modifying Expert Disclosure Date in Case Management and Scheduling Order. The Expert Disclosure deadline in the Case Management and Scheduling Order is extended to February 19, 2018. Signed by Judge James D. Whittemore on 1/16/2018. (JJB)** (Entered: 01/17/2018) |

| 01/18/2018 | 131 | **ORDER granting in part 125 Defendant's Motion to Amend Modified Case Management Order. Defendant is retroactively granted leave to file its 114 Motion for Partial Summary Judgment. Signed by Judge James D. Whittemore on 1/18/2018. (JJB)** (Entered: 01/18/2018) |
|---|---|---|
| 01/19/2018 | 132 | **ORDER denying 54 Defendant City of St. Petersburg's Motion for Summary Judgment. Signed by Judge James D. Whittemore on 1/19/2018. (JJB)** (Entered: 01/19/2018) |
| 01/22/2018 | 133 | MOTION for leave to file *declaration SUBMITTING NEW EVIDENCE SUPPORTING ITS OPPOSITION TO DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT* by All Plaintiffs. (Bloom, Justin) (Entered: 01/22/2018) |
| 01/22/2018 | 134 | **ORDER granting in part and denying in part 90 Plaintiffs' Motion to Strike Defendant's Affirmative Defenses. The Eleventh Affirmative Defense in 89 Defendant's Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint is STRICKEN. In all other respects, Plaintiffs' motion is denied. Signed by Judge James D. Whittemore on 1/22/2018. (JJB)** (Entered: 01/22/2018) |
| 01/22/2018 | 135 | **ORDER denying 106 Defendant's Motion to Stay Proceedings Pending Outcome of Administrative Proceedings Relating to FDEP Consent Order. Signed by Judge James D. Whittemore on 1/22/2018. (JJB)** (Entered: 01/23/2018) |
| 02/06/2018 | 136 | Joint MOTION to modify *CASE MANAGEMENT AND SCHEDULING ORDER* by All Plaintiffs. (Bloom, Justin) (Entered: 02/06/2018) |
| 02/08/2018 | 137 | **ORDER granting 136 Motion to modify case management and scheduling order. See order for new deadlines. Signed by Judge James D. Whittemore on 2/8/2018. (AEN)** (Entered: 02/08/2018) |
| 02/09/2018 | 138 | NOTICE of change of address by Brian Alexander Bolves (Bolves, Brian) *** Counsel notified on 2/9/2018 to submit a change of address request through our website (KMM)*** (Entered: 02/09/2018) |
| 02/14/2018 | 139 | NOTICE of Appearance by Amy Wells Brennan on behalf of City of St. Petersburg (Brennan, Amy) (Entered: 02/14/2018) |
| 02/16/2018 | 140 | **ENDORSED ORDER granting 133 Motion for Leave to File. Plaintiffs are granted leave to file excerpts from deposition transcripts of Claude Tankersley and Craven Askew and the January 18, 2018 Public Notice of Pollution in support of their opposition to Defendant's Second Motion for Summary Judgment. Additional argument is not permitted. Signed by Judge James D. Whittemore on 2/16/2018. (AEN)** (Entered: 02/16/2018) |
| 02/19/2018 | 141 | DECLARATION of Justin Bloom re 118 Response in Opposition to Motion by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bloom, Justin) (Entered: 02/19/2018) |
| 02/20/2018 | 142 | Supplemental DECLARATION of Justin Bloom re 141 Declaration by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Exhibit A)(Bloom, Justin) Modified text on 2/21/2018 (KMM). (Entered: 02/20/2018) |
| 02/26/2018 | 143 | Unopposed MOTION for Molly Coyne to appear pro hac vice by All Plaintiffs. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Bloom, Justin) (Entered: 02/26/2018) |
| 02/26/2018 | 144 | Unopposed MOTION for Kathryn Schmidt to appear pro hac vice by All Plaintiffs. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Bloom, Justin) (Entered: 02/26/2018) |

| 02/27/2018 | 145 | **ENDORSED ORDER 143 motion to appear pro hac vice is GRANTED. MOLLY COYNE ADMITTED *PRO HAC VICE*. JUSTIN BLOOM DESIGNATED LOCAL COUNSEL. Counsel are further notified that pursuant to the United States District Court Middle District of Florida Administrative Procedures for Electronic Filing, Section I, "all documents submitted for filing in civil, criminal, and miscellaneous cases must be filed electronically through CM/ECF." Therefore, the attorney(s) being admitted pro hac vice is/are directed to sign up for CM/ECF, enter an email address in their CM/ECF account and electronically file a notice of compliance with this Court's Order within thirty (30) days. Failure to comply with this Order as directed will result in counsel being terminated from the docket sheet without further notice. Signed by Judge James D. Whittemore on 2/27/2018. (AEN)** (Entered: 02/27/2018) |
| --- | --- | --- |
| 02/27/2018 | 146 | **ENDORSED ORDER 144 motion to appear pro hac vice is GRANTED. KATHRYN SCHMIDT ADMITTED *PRO HAC VICE*. JUSTIN BLOOM DESIGNATED LOCAL COUNSEL. Counsel are further notified that pursuant to the United States District Court Middle District of Florida Administrative Procedures for Electronic Filing, Section I, "all documents submitted for filing in civil, criminal, and miscellaneous cases must be filed electronically through CM/ECF." Therefore, the attorney(s) being admitted pro hac vice is/are directed to sign up for CM/ECF, enter an email address in their CM/ECF account and electronically file a notice of compliance with this Court's Order within thirty (30) days. Failure to comply with this Order as directed will result in counsel being terminated from the docket sheet without further notice. Signed by Judge James D. Whittemore on 2/27/2018. (AEN)** (Entered: 02/27/2018) |
| 02/27/2018 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Molly Coyne, appearing on behalf of Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Filing fee $150 receipt number TPA049062.) Related document: 143 Unopposed MOTION for Molly Coyne to appear pro hac vice. (AG) (Entered: 02/28/2018) |
| 02/27/2018 | | ***PRO HAC VICE FEES paid and Special Admission Attorney Certification Form filed by attorney Kathryn Schmidt, appearing on behalf of Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Filing fee $150 receipt number TPA049062.) Related document: 144 Unopposed MOTION for Kathryn Schmidt to appear pro hac vice. (AG) (Entered: 02/28/2018) |
| 03/14/2018 | 147 | Unopposed MOTION for leave to file DECLARATION SUBMITTING NEW EVIDENCE by All Plaintiffs. (Bloom, Justin) (Entered: 03/14/2018) |
| 03/14/2018 | 148 | NOTICE of compliance *WITH CM/ECF REGISTRATION AND NOTICE OF APPEARANCE* by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Coyne, Molly) (Entered: 03/14/2018) |
| 03/15/2018 | 149 | *** Terminated- Document improperly filed. Counsel notified to re-file in correct case *** NOTICE of compliance re 146 Order on motion to appear pro hac vice *Kathryn Schmidt* by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Schmidt, Kathryn) Modified text and NEF regenerated on 3/16/2018 (KMM). (Entered: 03/15/2018) |
| 03/16/2018 | 150 | NOTICE of compliance re 146 Order on motion to appear pro hac vice *Kathryn Schmidt* by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Schmidt, Kathryn) (Entered: 03/16/2018) |
| 03/22/2018 | 151 | **ORDER granting 147 Motion for Leave to File. Signed by Judge James D. Whittemore on 3/22/2018. (AEN)** (Entered: 03/22/2018) |

| 04/01/2018 | 152 | DECLARATION of Fredric Evenson re 151 Order on Motion for Leave to File by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Evenson, Fredric) (Entered: 04/01/2018) |
| --- | --- | --- |
| 04/03/2018 | 153 | Joint MOTION to modify Case Management and Scheduling Order by All Plaintiffs. (Bloom, Justin) (Entered: 04/03/2018) |
| 04/09/2018 | 154 | **ORDER granting 153 Joint MOTION to modify Case Management and Scheduling Order. See order for deadlines. Signed by Judge James D. Whittemore on 4/9/2018. (AEN)** (Entered: 04/09/2018) |
| 06/07/2018 | 155 | Unopposed MOTION to modify Case Management and Scheduling Order Dated April 9, 2018 by City of St. Petersburg. (Bolves, Brian) (Entered: 06/07/2018) |
| 06/14/2018 | 156 | **ORDER granting 155 Motion to modify Case Management and Scheduling Order. Signed by Judge James D. Whittemore on 6/14/2018. (QB)** (Entered: 06/14/2018) |
| 06/15/2018 | 157 | NOTICE of hearing: Status Conference set for 6/19/2018 at 03:30 PM in Tampa Courtroom 13 B before Judge James D. Whittemore.(CAB) (Entered: 06/15/2018) |
| 06/19/2018 | 158 | Minute Entry. Proceedings held before Judge James D. Whittemore: STATUS CONFERENCE held on 6/19/2018. Court Reporter: Lynann Nicely (CAB) (Entered: 06/19/2018) |
| 06/29/2018 | 159 | *** Terminated- Counsel notified the attorney who is making the appearance must be the filer of the notice *** NOTICE of *Michael Goodstein's* Appearance by Justin Bloom on behalf of Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Bloom, Justin) Modified text and NEF regenerated on 7/2/2018 (KMM). (Entered: 06/29/2018) |
| 06/29/2018 | 160 | *** Terminated- Counsel notified the attorney who is making the appearance must be the filer of the notice *** NOTICE of *Benjamin A. Pierce's* Appearance by Justin Bloom on behalf of Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Bloom, Justin) Modified text and NEF regenerated on 7/2/2018 (KMM). (Entered: 06/29/2018) |
| 06/29/2018 | 161 | PLAINTIFFS' REQUEST FOR SETTLEMENT CONFERENCE by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Bloom, Justin) Modified event and text on 7/2/2018 (KMM). (Entered: 06/29/2018) |
| 06/29/2018 | 162 | Joint MOTION to modify CASE MANAGEMENT AND SCHEDULING ORDER by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 06/29/2018) |
| 06/29/2018 | 163 | Joint MOTION to Amend/Correct 162 Joint MOTION to modify CASE MANAGEMENT AND SCHEDULING ORDER by All Plaintiffs. (Bloom, Justin) (Entered: 06/29/2018) |
| 07/02/2018 | 164 | NOTICE of Appearance by Michael David Goodstein on behalf of Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Goodstein, Michael) (Entered: 07/02/2018) |
| 07/02/2018 | 165 | NOTICE of Appearance by Benjamin Allen Pierce on behalf of Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper (Pierce, Benjamin) (Entered: 07/02/2018) |
| 07/06/2018 | 166 | Joint MOTION to modify CASE MANAGEMENT AND SCHEDULING ORDER by All Plaintiffs. (Bloom, Justin) (Entered: 07/06/2018) |

| | | |
|---|---|---|
| 07/11/2018 | 167 | **ORDER deferring ruling on 101 Motion for Partial Summary Judgment, 114 Motion for Partial Summary Judgment, 120 Motion to Strike ; denying as moot 161 Motion for settlement conference; denying as moot 162 Motion to modify; denying as moot 163 motion to amend/correct; granting 166 Motion to modify ; staying all deadlines in the CMSO. Signed by Judge James D. Whittemore on 7/11/2018. (SMA)** (Entered: 07/11/2018) |
| 07/11/2018 | 168 | **ORDER dismissing case without prejudice; directing the Clerk to administratively close the file. Signed by Judge James D. Whittemore on 7/11/2018. (SMA)** (Entered: 07/11/2018) |
| 07/27/2018 | 169 | STATUS report by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper. (Bloom, Justin) (Entered: 07/27/2018) |
| 08/29/2018 | 170 | TRANSCRIPT of Status Conference held on 6/19/2018 before Judge Whittemore. Court Reporter Lynann Nicely,Telephone number (813) 301-5252. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or purchased through the Court Reporter. Redaction Request due 9/19/2018, Redacted Transcript Deadline set for 10/1/2018, Release of Transcript Restriction set for 11/27/2018. (LN) (Entered: 08/29/2018) |
| 08/29/2018 | 171 | NOTICE to counsel of filing of OFFICIAL TRANSCRIPT. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may purchase a copy from the court reporter or view the document at the clerk's office public terminal. Court Reporter: Lynann Nicely. (LN) (Entered: 08/29/2018) |
| 09/06/2018 | 172 | Joint MOTION to Reopen Case *for Further Proceedings* by City of St. Petersburg. (Attachments: # 1 Exhibit DRAFT Stipulated Order of Partial Dismissal, # 2 Exhibit Transcript of Status Conference)(Bolves, Brian) (Entered: 09/06/2018) |
| 09/10/2018 | 173 | **ORDER granting 172 Motion to Reopen Case. Signed by Judge James D. Whittemore on 9/10/2018. (AKA)** (Entered: 09/10/2018) |
| 10/15/2018 | 174 | NOTICE by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper *NOTICE OF LODGING* (Attachments: # 1 STIPULATED ORDER OF PARTIAL DISMISSAL AND COURT'S RETENTION OF JURISDICTION, # 2 Attachment A to Stipulated Order, # 3 Attachment B to Stipulated Order)(Bloom, Justin) (Entered: 10/15/2018) |
| 12/01/2018 | 175 | NOTICE by Ecological Rights Foundation, Our Children's Earth Foundation, Suncoast Waterkeeper *of Letter from United States* (Attachments: # 1 Letter from United States Regarding Proposed Settlement)(Bloom, Justin) (Entered: 12/01/2018) |
| 12/03/2018 | 176 | Joint MOTION to Reopen Case *For Further Proceedings* by All Plaintiffs. (Bloom, Justin) (Entered: 12/03/2018) |
| 12/03/2018 | 177 | Joint MOTION for Settlement *via Entry of STIPULATED ORDER OF PARTIAL DISMISSAL AND COURT'S RETENTION OF JURISDICTION* by All Plaintiffs. (Bloom, Justin) (Entered: 12/03/2018) |
| 12/03/2018 | 178 | Joint MOTION for miscellaneous relief, specifically Entry of Stipulated Order *OF PARTIAL DISMISSAL AND COURT'S RETENTION OF JURISDICTION* by All Plaintiffs. (Attachments: # 1 Exhibit Consent Order OGC No. 16-1280, # 2 Exhibit First Amendment to Consent Order)(Bloom, Justin) (Entered: 12/03/2018) |

| 12/04/2018 | 179 | **ORDER granting 176 Joint Motion to Reopen Case. Signed by Judge James D. Whittemore on 12/4/2018. (AKA)** (Entered: 12/04/2018) |
|---|---|---|
| 12/04/2018 | 180 | **ORDER Setting Hearing on Motion 177 Joint MOTION for Settlement *via Entry of STIPULATED ORDER OF PARTIAL DISMISSAL AND COURT'S RETENTION OF JURISDICTION*, 178 Joint MOTION for miscellaneous relief, specifically Entry of Stipulated Order *OF PARTIAL DISMISSAL AND COURT'S RETENTION OF JURISDICTION* : Motion Hearing set for 12/6/2018 at 10:00 AM in Tampa Courtroom 13 B before Judge James D. Whittemore. The parties are to appear telephonically as directed in the Order. Signed by Judge James D. Whittemore on 12/4/2018. (AKA)** (Entered: 12/04/2018) |
| 12/06/2018 | 181 | Minute Entry. Proceedings held before Judge James D. Whittemore: MOTION HEARING held on 12/6/2018 re: 177 Joint MOTION for Settlement via Entry of STIPULATED ORDER OF PARTIAL DISMISSAL AND COURT'S RETENTION OF JURISDICTION by All Plaintiffs and 178 Joint MOTION for miscellaneous relief, specifically Entry of Stipulated Order OF PARTIAL DISMISSAL AND COURT'S RETENTION OF JURISDICTION by All Plaintiffs. Court Reporter: Lynann Nicely (KAC) Modified type of hearing and added specific motions on 12/7/2018 (APV). (Entered: 12/06/2018) |
| 12/13/2018 | 182 | Joint MOTION for miscellaneous relief, specifically Entry of Stipulated Order of Partial Dismissal and Court's Retention of Jurisdiction by All Plaintiffs. (Attachments: # 1 Consent Order OGC No. 16-1280, # 2 First Amendment to Consent Order)(Bloom, Justin) (Entered: 12/13/2018) |
| 12/13/2018 | 183 | NOTICE of change of address by Kathryn Schmidt (Schmidt, Kathryn) (Entered: 12/13/2018) |
| 12/13/2018 | 184 | NOTICE of change of address by Michael David Goodstein (Goodstein, Michael) (Entered: 12/13/2018) |
| 12/17/2018 | 185 | **ENDORSED ORDER denying as moot 177 per the filing of 182 . Signed by Judge James D. Whittemore on 12/17/2018. (AKA)** (Entered: 12/17/2018) |
| 12/17/2018 | 186 | **ENDORSED ORDER denying as moot 178 per the filing of 182 . Signed by Judge James D. Whittemore on 12/17/2018. (AKA)** (Entered: 12/17/2018) |
| 12/17/2018 | 187 | **ENDORSED ORDER entering 182 Stipulated Order of Partial Dismissal and Court's Retention of Jurisdiction. As stated within the Stipulated Order, any motion for costs of litigation shall be referred to Magistrate Judge Anthony E. Porcelli. Signed by Judge James D. Whittemore on 12/17/2018. (AKA)** (Entered: 12/17/2018) |
| 12/17/2018 | 188 | **ORDER directing administrative closure. Signed by Judge James D. Whittemore on 12/17/2018. (AKA)** (Entered: 12/17/2018) |
| 12/20/2018 | 189 | Joint MOTION for Extension of Time to File Motion For "Costs of Litigation" Under Section 505(d) of the Clean Water Act by All Plaintiffs. (Bloom, Justin) Modified text to lower case on 12/20/2018 (BSN). (Entered: 12/20/2018) |
| 12/21/2018 | 190 | **ENDORSED ORDER granting 189 Motion for Extension of Time to File to the extent set forth in the motion. Signed by Magistrate Judge Anthony E. Porcelli on 12/21/2018. (JMF)** (Entered: 12/21/2018) |
| 01/30/2019 | 191 | Joint MOTION for miscellaneous relief, specifically an order granting parties briefing schedule by All Plaintiffs. (Bloom, Justin) (Entered: 01/30/2019) |
| 01/31/2019 | 192 | NOTICE of telephonic hearing on motion re 191 Joint MOTION for miscellaneous relief, specifically an order granting parties briefing schedule. Telephonic Motion Hearing set |

| | | |
|---|---|---|
| | | for 2/7/2019 at 11:00 AM in Tampa Courtroom 10 A before Magistrate Judge Anthony E. Porcelli. The parties shall appear telephonically at the hearing by calling toll-free number 1-888-684-8852 on the day of the hearing and entering access code 8895301 followed by security code 0207 when prompted.(JMF) (Entered: 01/31/2019) |
| 02/07/2019 | 193 | Minute Entry. Proceedings held before Magistrate Judge Anthony E. Porcelli: MOTION HEARING held on 2/7/2019 re 191 Joint MOTION for miscellaneous relief, specifically an order granting parties briefing schedule filed by Our Children's Earth Foundation, Ecological Rights Foundation, Suncoast Waterkeeper. (DIGITAL) (LV) (Entered: 02/07/2019) |
| 02/07/2019 | 194 | **ENDORSED ORDER granting 191 Motion. The parties should adhere to the following deadlines: Defendant's expert disclosure 2/28/19; Plaintiffs' motion for fees and costs 3/15/19; Defendant's response to the motion 3/29/19; and Plaintiff's reply (not to exceed 20 pages in length) 4/5/19. To the extent that the Court determines a hearing is necessary, such hearing will be scheduled by separate notice. If the parties encounter issues complying with the aforementioned deadlines, such as Plaintiffs requiring retention of an expert, the parties shall telephonically contact the undersigned's chambers at (813) 301-5541 to request a telephonic hearing.. Signed by Magistrate Judge Anthony E. Porcelli on 2/7/2019. (JMF)** (Entered: 02/07/2019) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/13/2019 08:55:04 | | | |
| **PACER Login:** | vnfshared:2658250:0 | **Client Code:** | 15343.00001.LAM |
| **Description:** | Docket Report | **Search Criteria:** | 8:16-cv-03319-JDW-AEP |
| **Billable Pages:** | 15 | **Cost:** | 1.50 |

Exhibit 8

to the

Declaration of Kathryn Schmidt

In Support of

Plaintiffs' Motion for Attorneys'
Fees and Costs

Suncoast Waterkeeper et al. v. City of St.
Petersburg Case No. 8:16-cv-03319-JDW-AEP

**SUNCOAST WATERKEEPER et al.**

**v.**

**CITY OF ST. PETERSBURG**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**Case No.: 8:16-cv-03319-JDW-AEP**

Expert Disclosure Report

Thomas Christ, P.E.

May 18, 2018

**TABLE OF CONTENTS**

**1.0 Introduction** ................................................................................................... 1

**2.0 Background** ................................................................................................... 2

    2.1 The City's Sanitary Sewer System ..................................................................... 2

    2.2 Sanitary Service Area Descriptions ................................................................... 4

    2.3 Satellite Communities .................................................................................... 6

    2.4 How Inflow and Infiltration Causes SSOs ........................................................ 6

    2.5 The City's Wastewater Flows .......................................................................... 7

    2.6 General Discussion of Sanitary Sewer Overflows (SSOs) .................................... 9

    2.7 The City of St. Petersburg's SSOs ................................................................... 9

    2.8 Surface Waters to which St. Petersburg's SSOs were Discharged ...................... 12

    2.9 Pollutants in SSOs ....................................................................................... 14

**3.0 Methods** ..................................................................................................... 16

    3.1 Assessment of the Causes of the SSOs ............................................................ 16

    3.2 SSOs Reaching Surface Waters Directly or Through Storm Drains .................... 17

    3.3 Assessment of the Condition of the City's Wastewater Collection System and Water Reclamation Facility Capacities .......................................................................... 17

    3.4 Estimated Delayed Capital Expenditures and Avoided Costs ........................... 19

**4.0 Opinions and Basis for Opinions** .............................................................. 23

    *Opinion 1: Since September 2011, the City of St. Petersburg discharged SSOs of raw or partially treated sewage in excess of 200 million gallons, impacting waters within the City and the coastal waters surrounding the City.* .................................................... 23

    *Opinion 2: St. Petersburg's SSOs were caused in part by insufficient treatment and disposal capacity at the WRFs.* ......................................................................... 24

    *Opinion 3: The City experiences RDII rates during wet weather events that result in insufficient hydraulic capacity within the WCS to convey peak wet weather flows without SSOs.* ................................................................................................................ 26

    *Opinion 4: Excessive GWI and RDII in the sewer collection system is a result of past inadequate rehabilitation and replacement (R&R).* ............................................. 27

    *Opinion 5: The Albert Whitted WRF should not have been closed until the recommended capacity improvements were made at the SWWRF and GWI and RDII flows were significantly decreased.* ..................................................................................... 30

*Opinion 6:  The City knew or should have known after Tropical Storm Debbie in 2012 that it had a significant RDII problem and should have taken steps at that time to address RDII.* .................................................................................................................. 31

*Opinion 7: SSOs will likely continue to occur until the City fully addresses the RDII flows.* .................................................................................................................. 34

*Opinion 8:  The City's Volume of SSOs is high when compared to similar systems in Florida.* ............................................................................................................... 35

*Opinion 9:  The FDEP Consent Orders were and are ineffective to adequately reduce SSOs.* .................................................................................................................. 35

*Opinion 10:  The City should be required to fully inspect the entire WCS gravity sewer lines and public laterals using NASSCO standards within five years with a 10 year cycle thereafter, and to take consistent, standard corrective action.* ........................................... 37

*Opinion 11: The City should be required to complete visual or digital inspections of all manholes using NASSCO standards with MACP coding within five years, and re-inspect manholes on a 10-year cycle.* ....................................................................................... 39

*Opinion 12: The City should be required to develop as asset management program for their force-mains including cleaning, inspection, condition assessment, and rehabilitation.* ...... 39

*Opinion 13:  The City should be required to develop an asset management program for their lift stations including cleaning, inspection, condition, and capacity assessments, and rehabilitation within the next year and on an 18 month cycle thereafter.* ........................... 40

*Opinion 14: The City should be required to implement a SSAMP for the sewer system including the WCS, WTS, WRF, reclaimed water system, and the effluent disposal systems.* .................................................................................................................. 41

*Opinion 15: The City should define the wet weather design event and WCS capacity goals, to be included in the Integrated Water Resources Master Plan.* ........................................ 41

*Opinion 16:  The City should be required to install permanent flow monitoring and continuously monitor its flow.* ....................................................................................... 42

*Opinion 17: The City should be required to implement all recommendations in the IWRMP that pertain to the wastewater system capacity, R&R, spill reduction and City management.* .................................................................................................................. 43

*Option 18: The City should be required to implement additional measures appearing in its CMOM dated April 30, 2018, within six months.* ................................................................ 43

*Opinion 19: The City should implement measures to address private laterals as a significant source of its I/I problem.* ..................................................................................... 44

*Opinion 20: SSOs, weather or not they reach surface waters, pose a threat to human health.* .................................................................................................................. 45

*Opinion 21: The City should conduct an exfiltration study to identify and evaluate any areas where there is potential for sewage exfiltration and surface water or MS4 cross-contamination.* ........................................................................................................... 45

ii

**5.0 Avoid and Delayed Costs**................................................................................................ 46

*Opinion 22: The City avoided costs by waiting until 2016 to take firm steps to reduce SSOs.* ................................................................................................................................................ 46

*Opinion 23: The City avoided costs by not adhering to a program of CCTV inspection of all of its pipes and routine inspection of its manholes and avoiding taking corrective action on pipes found to be experiencing infiltration.* .......................................................................... 46

- The flows during August 2016 were 115 mgd which exceeded capacity at that time.

- During Hermine in August and September 2016, the flows were over 40 mgd for seven days with a max daily flow of 54.26 mgd. Peak hour flows were not available. The lower flow of Hermine over the 2012 & 2013 seasons seen at the SWWRF was because not all of the raw wastewater from the AWWRF service area was being diverted to the SWWRF via LS 85.

- The closure of AWWRF and the resulting reduced capacity was a direct cause of the large discharges seen at the SWWRF and AWWRF in August of 2015 and in the discharges that occurred during wet weather in June through September 2016. At a minimum that loss of 12.4 mgd could have reduced the overflows and discharge volume and reject water injection by an equivalent amount. The AWWRF was closed at the time, but high wastewater flows from RDII sources were diverted to the WRF and then to Tampa Bay.[107]

- City WRF operations staff believed the three remaining plants did not have the capacity to manage peak flows.[108]

- I have reviewed the reports related to the closure of the AWWRF and in my professional judgment the plant should not have been closed prior to the City implementing the consultant's recommended capacity increases at the SWWRF to manage the peak flows of the combined SWWRF and AWWRF service areas.

- In addition, the AWWRF should not have been closed until a significant reduction in GWI and RDII had been made and documented.


*Opinion 6:  The City knew or should have known after Tropical Storm Debbie in 2012 that it had a significant RDII problem and should have taken steps at that time to address RDII.*


**Basis for Opinion 6:**
- Opinions 1, 2, 3 and 4 and Basis for Opinions  1, 2, 3 and 4
- Figures 4-8, depicting the daily flows since January 2000, show that the City was aware of the high GWI, high peak flows, and excessive RDII since at least the date of the 2000 FDEP CO.

---

[107] RS&H, Inc., Evaluation of Sanitary Sewer Overflows and Unpermitted Discharges Associated with Hurricanes Hermine & Matthew, January 6, 2017.

[108] Interviews of city employees by Florida Fish and Wildlife Conservation Commission.

- The analysis I performed and figures I prepared indicate that beginning in 2012, the City started to experience an increase in the intensity of wet weather events and resulting higher flows into the WRFs. City personnel noticed these higher flows.[109]

- Figure 18 presents the RDII response of the flows received at the SWWRF and the AWWRF during the June 2012 Tropical Storm Debbie event.[110] The combined treatment capacity of both those WRFS was 32.4 MGD at that time with an average daily dry flow of 14 mgd. This storm resulted in hourly peaks approaching 55 mgd as shown below or a peak factor of nearly 4 times the average daily flow.[111] From the City data in Figure 4, the daily peak of TS Debbie was 102 mgd at all four plants when the four plant average daily flow was approximately 30 mgd. The 102 mgd represents a 3.4 <u>daily</u> peaking factor. . TS Debbie was the first significant storm event whereby daily peaks exceeded 2.5 since 2004. Since TS Debbie, there have been other significant events in 2013, 2014, 2015, and 2016 where the daily peak flows exceeded 2.5. These peak flows were a result of RDII entering the sewer system, likely via various defects as depicted in Figure 3.

- The City's response to the increased wet weather events following the 2012 studies focused on flow diversion, and capacity studies for the decommissioning of the AWWRF. The City's consultants studied wet weather capacity at the SWWRF in 2013 and 2014, and in July 2014 recommended <u>increasing</u> the capacity at SWRRF before closing AWWRF. Instead, the City <u>decreased</u> capacity at the WRFs by taking one of its plants (AWWRF) offline in April of 2015 without increasing capacity at the receiving plant (SWWRF) at a time when increasing wet weather events and flows appeared to be evident.

- There was no increased effort to address sources of GWI or RDII on a system wide basis following Tropical Storm Debbie.

- City personnel observed high flows in 2012, indicative of significant RDII persisting in the WCS.[112]

---

[109] Deposition of Lane Longley, Vol. 1.

[110] CH2M Phase I.

[111] *Ibid.*

[112] Deposition of Lane Longley, Vol. 1.

32

- Upon review of the City's reported R&R (represented in Figure 22), the sewer pipe R&R increased from 1% in FY 2012 to 1.3% in FY 2013, but then decreased to 0.7% in FY 2014 and 0.8% in FY 2015.

- The City's CCTV inspection between 2000-2011 averaged 100 miles (10% of lines) per year with a peak in 2008 of 150 miles (17% of lines).  After expiration of the 2000 FDEP CO, the CCTV inspection averaged 60 miles (7% of lines) per year.  I cannot determine from the City's records produced to-date whether the City's CCTV inspection included PACP/NASSCO evaluation.

- An example of a proper response by a utility to increased flows seen in Florida in 2012 can be observed in the response of the City of Venice Utility Department.  The City of Venice is a coastal city of similar age and approximately 50 miles south of St. Petersburg.  After the 2012 Tropical Storm Debbie wet weather event, Venice Utilities implemented an aggressive program to effectively reduce their infiltration and RDII by rehabilitating their sewers.  The Venice Utility began their program in FY 2013 targeting the known areas of high infiltration with CCTV and PACP coding followed up with CIPP of the gravity mainlines and manhole inserts and manhole lining.  In July and September of 2013 they experienced excessive rainfall events just as the sewer rehabilitation program began.  The September 2013 event was approximately 9 inches of rainfall over three days.  Hourly flows received at the WRF peaked from 2 mgd ADF to over 8 mgd or a peak factor of 4. While no SSOs were reported, the system was overloaded.  For the next two years the Venice Utility continued their CCTV and sewer rehabilitation program.  On average, the CCTV indicated defects in 35% of sewer lines surveyed and the City performed CIPP in those areas.  The CIPP was the mainline only and not the public nor private laterals.  Then in July of 2015 they experienced a nearly identical rainfall event, but the peak flow at the WRF was reduced by more than half (green line).  The resultant peak factor was 2 vs 4 from 2 years prior. Figure 19 presents the comparison of flows for the 2013 pre-rehabilitation storms and 2015 post rehabilitation storm.  Figure 19 demonstrates the effective RDII reduction efforts of the Venice Utilities.[113]

---

[113] Stantec Consulting Services Inc., City of Venice Inflow and Infiltration Study of City's Wastewater Collection System – Final Study, June 3, 2016.

- In my opinion, the City exhibited a failure of planning, capital investment and maintenance in not addressing its evident inflow and infiltration problems.

### Opinion 7: SSOs will likely continue to occur until the City fully addresses the RDII flows.

**Basis for Opinion 7:**

- Opinions 1, 2, 3, and 4 and Basis for Opinions 1, 2, 3, and 4
- The City has never adequately inspected the entire City using CCTV/digital inspection and code all defects and observations with PACP and MACP codes following NASSCO guidelines.  Such inspection is necessary to adequately understand and address the necessary R&R to address RDII flows.  The City's continued use of QTV is inadequate for finding leaks in the sewer piping.
- Without using CCTV coupled with industry standards of PACP and MACP coding, the City will **not** know the extent of their collection system defects.  Thus, the City will not be able to develop a complete plan to rehabilitate the defective system until this is completed.
- On August 31, 2016, rainfall gauges at the four City WRFs were recorded and averaged during the days following the event.  The WRF averaged values for the 24-hour rainfall was 7.9 inches on August 31, 2016 and a 3-day storm total was 9.9 inches.[114]  From these rainfall estimates, the Hurricane Hermine rainfall event for the City of St Petersburg closely represents a 10-year 24-hr event pursuant to the NOAA Point Precipitation Frequency Estimates provided in Figure 19.[115]  The rain gauge data collected by CH2M Hill during this event summed to 7.4 inches for August 31 24-hour total and 9.5 inches for the three days of August 31 through September 2.[116]
- Increases in the WRFs treatment, hydraulic, and disposal capacities will not confidently eliminate SSOs in the collection system.  The collection system is composed of sewer laterals, gravity pipes, pumps, and force mains.  Overloading the hydraulic capacity of these systems with excessive RDII may cause SSOs.
- Increasing capacity at the WRFS will not prevent dry-weather SSOs, which are due to line blockages and breaks within the WCS.

---

[114] RS&H, Inc., Evaluation of Sanitary Sewer Overflows and Unpermitted Discharges Associated with Hurricanes Hermine & Matthew, January 6, 2017.

[115] *Ibid.*

[116] CH2M HILL Engineers, Inc., Spreadsheet titled "Raw_RainGaugeData.xls."

34

*Opinion 8: The City's Volume of SSOs is high when compared to similar systems in Florida.*

**Basis for Opinion 8:**

- Opinion 1 and Basis for Opinion 1

- In FY 2015/16 the City reported 353 SSOs totaling more than 613,000 gallons of raw sewage from the sewer collection system.[117]  This was in addition to the unpermitted discharges into Tampa Bay and deep well injection.  In review of the Florida Benchmarking, the City of Largo had the next highest reported value of 27,880 gallons then City of Pinellas Park with 2,000 gallons.[118]

- In 2016, the City's SSOs comprised 51% of all SSOs statewide.[119]

*Opinion 9: The FDEP Consent Orders were and are ineffective to adequately reduce SSOs.*

**Basis for Opinion 9:**

- Opinions 1, 2, 3, 4, 6, 7, and 8 and Basis for Opinions 1, 2, 3, 4, 6, 7, and 8

- The CMOM started in 1999 appeared to be an audit of activities performed with no mandates or metrics to monitor the progress of the City towards improved asset management of the sewer system to prevent SSOs.[120]

- The 1999 through 2008 Annual CMOM Audits reviewed were audits of work performed and not requirements of work to be performed to reduce GWI and RDII.  While dry weather SSO reductions were documented, there was no documentation of GWI or RDII reduced.[121]

- The 2000 FDEP CO failed to mandate annual sewer system inspection nor rehabilitation requirements.

- The 2000 FDEP CO failed to mandate GWI and RDII acceptable levels or reduction requirements.

---

[117] Table A to Plaintiffs' Responses to City of St. Petersburg's Contention Interrogatories.

[118] Florida Benchmarking Consortium, FY15/16 Annual Services Report, November 2017.

[119] Florida Department of Environmental Protection, Investigation Report Regarding City of St. Petersburg's Sanitary Sewer Overflows (Certified Copy), January 27, 2017.

[120] City of St. Petersburg, Florida Management, Operation and Maintenance (MOM) Program, Annual Performance Audit Report For Fiscal Year 1999, September 1999.

[121] CMOM Annual Audit Reports For Fiscal Years 1999-2008.

- The 2017 FDEP CO does not require any level or level of removal of GWI and RDII in the City Ordinances.

- The 2017 FDEP CO does not require any level of adequate capacity for the WCS, WRFs, and disposal systems in the City Ordinances including selecting a design storm.

- Without GWI, RDII, and capacity requirements, the City is at risk of neglecting WCS rehabilitation as it did in the past. The City's efforts toward inspecting and repairing the WCS following expiration of the 2000 FDEP CO dropped significantly.

- The 2000 FDEP CO stipulated a dollar value of $2.8 million per year to be spent on I/I reduction without knowing the full extent of the rehabilitation needs. The City made structural improvements and cleaned the pipes providing the capacity to move the flow to the WRFs. Over the course of the 10 years, the City did not significantly remove GWI and RDII even though it was mentioned in the 2000 FDEP CO. The 2000 FDEP CO ordered the system to be rehabilitated following the recommendations of their engineer's report, but the reduction of the GWI and RDII flows were not accomplished. Those peak flows in the early 2000's are similar those peaks value seen in 2015 and 2016 events. GWI and RDII goals should have been set in the 2000 FDEP CO. In my professional opinion, because infiltration reduction specifics were not ordered in the 2000 CO, infiltration was not adequately addressed, and SSOs occurred.

- The 2017 FDEP CO contains a similar approach to the 2000 FDEP CO, in that it does not specify GWI and RDII removal goals or limits within the WCS. This approach failed under the 2000 FDEP CO and led to the SSOs experienced by the City.

- The 2017 FDEP CO funding requirement terminates in 2022 with no provisions to guarantee the City continues its efforts to reduce GWI and RDII and reduce the risk of SSOs.

- The 2017 FDEP CO contains a spending cap of $14 million per year regardless of the true cost of rehabilitating the collection system. WCS R&R is a program that will extend decades into the future. City employees, managers and elected officials will change over time. The 2017 FDEP CO should require GWI and RDII acceptable levels rather than spending caps.

- The 2017 FDEP CO contains measures for increasing the capacity of the WRFs, but there is no indication that additional capacity at the WRFs will eliminate SSOs. That capacity target was the largest sewer flow seen. However, as the population grows and as capacity improvements are made to WCS (i.e. LS 85), that capacity may result in an increase in RDII. Given the high

36

GWI rates and high RDII rates, it is my opinion that as capacity is added, during wet weather events the groundwater will contribute even more flows.

- The 2017 FDEP CO contains no requirement that the City implement all findings of the Integrated Water Resources Master Plan (IWRMP). The City has approval rights of the document and discretion to decide which recommendations it will implement.[122]
- My review of several other FDEP SSO consent orders in the State of Florida indicates they were not effective. Those cities continued to have SSOs. This includes consent orders with Emerald Coast Utility Authority, Pasco County, and the cities of Tampa, Largo, and St. Augustine.

*Opinion 10: The City should be required to fully inspect the entire WCS gravity sewer lines and public laterals using NASSCO standards within five years with a 10 year cycle thereafter, and to take consistent, standard corrective action.*

**Basis for Opinion 10:**

- Opinions 1, 3, 4, 6, 7, 8, and 9 and Basis for Opinions 1, 3, 4, 6, 7, 8, and 9
- The 2017 FDEP CO contains no requirement that the City inspect its lines through the use of CCTV.
- The 2017 FDEP CO contains no requirement of GWI or RDII reduction objectives or of the criteria concerning pipe lining, replacement or repair.
- The 2017 FDEP CO contains no requirement for corrective action for lining, repair or replacement after inspection.
- From the 2018 CMOM update report, less than 600,000 ft of sewer pipe was been inspected in FY 2017 vs. the one million of feet needed to be inspected to maintain their proposed 5-year inspection schedule.[123]
- Since 2000 through FY 2016, the City has only rehabilitated only 16% of the WCS sewer lines (Figure 24).

---

[122] City of St. Petersburg, Wastewater Program Management and Integrated Water Resources Planning, Appendix A - Scope of Services.

[123] City of St. Petersburg, CMOM Update Report, April 30, 2018.

- The City has failed to properly inspect all of the public lines in the WCS using CCTV and coding pipeline observations with NASSCO PACP standards by moving to QTV inspection methods.

- QTV is not an acceptable method for detecting leaks in pipes, and is intended to detect blockages.[124]

- CCTV and PACP coding of observations under NASSCO is the industry-accepted method for inspection of sewer lines.

- The City should complete the CCTV and PACP coding inspection of the entire WCS within five years or approximately one million feet per year. QTV is acceptable for lined sewer pipes within the past five years.

- The City should prioritize its CCTV inspection and R&R activities to areas that are identified through CH2M Phase II report then the IWRMP as experiencing high infiltration and areas that have high groundwater levels, followed by areas of the City with the oldest pipes.

- Lines that have been inspected with CCTV (and not QTV) with identified PACP codes within the last 5 years do not need to be inspected until 5 years from the date of last inspection under NASSCO standards.

- Following the complete CCTV and PACP coding for the entire system, the City should move to a 10-year cycle for inspection using a combination of QTV, CCTV, and flow monitoring for pipeline and manhole assessments.

- Corrective Action as presented in Table 8 should be standardized, at a minimum, following EPA guidelines. In my opinion, given the City's history of not addressing sources of I/I, the City needs a structured protocol for its inspection and corrective action measures, and an acceptable protocol appears in EPA guidelines.[125]

---

[124] Deposition of Lane Longley, Vol. 1.

[125] Condition Assessment of Wastewater Collection Systems, White Paper, Environmental Protection Agency, EPA/600/R-09/049, May 2009.
https://nepis.epa.gov/Exe/ZyNET.exe?ZyActionL=Register&User=anonymous&Password=anonymous&Client=EPA&Init=1, last accessed May 18, 2018.

*Opinion 11: The City should be required to complete visual or digital inspections of all manholes using NASSCO standards with MACP coding within five years, and re-inspect manholes on a 10-year cycle.*

**Basis for Opinion 11:**

• Opinions 1, 3, 4, 6, 7, 8, and 9 and Basis for Opinions 1, 3, 4, 6, 7, 8, and 9

• The 2017 FDEP CO contains no requirement for inspecting all manholes throughout the system.

• Since 2000 through FY 2016, the City has only rehabilitated only 25% of the WCS manholes (Figure 24).

• The City should begin to prioritize areas for manhole inspection indicated from CH2M Hill Phase II flow monitoring data that experience high I/I and areas of high groundwater levels. The City shall re-prioritize following the completion of the Integrated Water Master Plan.

• MACP coding of visual or digital observations under NASSCO is the industry-accepted method for inspection of sewer manholes.

• The City should complete the inspections with MACP coding inspection of the entire WCS within five years or approximately 5000 manholes per year.

• The City should prioritize its manhole inspection and R&R activities to areas that are identified through CH2M Phase II report then the IWRMP as experiencing high infiltration and areas that have high groundwater levels, followed by areas of the City with the oldest pipes.

*Opinion 12: The City should be required to develop as asset management program for their force-mains including cleaning, inspection, condition assessment, and rehabilitation.*

**Basis for Opinion 12:**

• Opinions 1 and 9 and Basis for Opinions 1 and 9

• The 2017 FDEP CO contains no requirement for inspecting and cleaning force mains.

• The City shall GPS locate and perform assessments of all force mains and their appurtenances including all valves, air release valves, and aerial crossing.

• The City shall evaluate force-mains for potential sulfide and corrosion and identify remedies for such.

- The City shall identify critical force mains serving critical infrastructure such as hospitals and where a force-main break and an SSO would be in highly populated areas.
- The City shall develop upstream lift station and valve shut-off plans and force main bypass plans for all force mains should a force main break or fail.

*Opinion 13: The City should be required to develop an asset management program for their lift stations including cleaning, inspection, condition, and capacity assessments, and rehabilitation within the next year and on an 18 month cycle thereafter.*

**Basis for Opinion 13:**

- Opinions 1, 9, and 12 and Basis for Opinions 1, 9, and 12
- The 2017 FDEP CO contains no requirement for inspecting lift stations.
- The City should require Supervisory Control and Data Acquisition ("SCADA") on all lift stations with at a minimum, supervisory control, pump operating times, wetwell levels, and appropriate alarms.
- The City should continuously monitor the capacity of the lift stations by imposing a 10-hour nominal hour pump operating time (NAPOT) requirement similar to that of the Miami-Dade EPA Consent Order Case: No. 1:12-cv-24400-FAM.  This will enable the City to monitor that at a minimum, the lift station is capable of a nominal hourly peak factor of 2.4.  No additional sewer flow via new connections or modifications to existing connections shall be allowed onto a lift station that has a NAPOT of 10 or more hours.
- Proper assessment shall include age, condition evaluations, and useful life estimates for all electrical and mechanical equipment, appropriate maintenance of spare parts inventory, utilization of SCADA alarm systems, capacity, provision or need for backup power generation, and availability of portable pumps to address pump station failures.
- The City shall add to its CIP any pump station repair, rehabilitation, or replacement projects or other projects warranted based on the results of the City's lift station condition assessment.

***Opinion 14: The City should be required to implement a SSAMP for the sewer system including the WCS, WTS, WRF, reclaimed water system, and the effluent disposal systems.***

**Basis for Opinion 14:**

• Opinions 1, 2, 9, and 12 and Basis for Opinions 1, 2, 9, and 12

• The 2017 FDEP CO contains no requirement for developing a sewer system asset management system (SSAMP).

• The City has lacked proper asset planning for nearly 20 years.  The last known SSEMP was in 1998.   The CH2M Hill Phase I and II reports are not asset plans; they are wet weather mitigation programs which focus on how the system performs during wet weather events.

• It is unknown whether the IWRMP will include a SSAMP.  To the extent the IWRMP will include a SSAMP, a December 2019 completion date is too long.  An SSAMP should be completed immediately.

• The SSAMP shall incorporate all inspections, condition assessments, useful life, GPS, maintenance, and preventative maintenance schedules for all sewer system assets to ensure the cost effective economic life of the assets.

• The City shall integrate a work order management system with identified preventative maintenance schedules

• The City shall integrate the City's GIS system with the SSAMP.

• The City's GIS system is incomplete and missing information on the sewer system.[126]

***Opinion 15: The City should define the wet weather design event and WCS capacity goals, to be included in the Integrated Water Resources Master Plan.***

**Basis for Opinion 15:**

• Opinions 1, 2, 3, 7 and 9 and Basis for Opinions 1, 2, 3, 7 and 9

• Pursuant to the scope, the IWRMP models the 3-, 5-, and 7- inch rainfall events and does not model the extreme rainfall events seen by the City since 2015 nor does the IWRMP model the

---

[126] LA Consulting, Inc., City of St. Petersburg Water Resources Department Management Evaluation - Final Report, December 11, 2017.

10-year 24-hour and 72-hour design storms of 7.53 inches over 24-hours and 9.69 inches in the proposed IWRMP wet weather scenarios.[127]

• Pursuant to the scope, the IWRMP does not define capacity to set goals or requirements for the dynamic modeling of wet weather events.

*Opinion 16:  The City should be required to install permanent flow monitoring and continuously monitor its flow.*

**Basis for Opinion 16:**

• Opinions 1, 2, 3, 6, 7 and 9 and Basis for Opinions 1, 2, 3, 6, 7 and 9

• The 2017 FDEP CO contains no requirement to perform continuous flow monitoring.

• The flow-monitoring work performed by CH2M Hill to date is sound and within appropriate engineering practice. CH2M Hill recommends permanent flow monitoring, and that should be implemented by the City.

• Permanent flow monitoring will enhance the City's ability of assessing the capacity of the system during dry and wet seasons.  Without permanent flow monitoring, the City will not be able to continuously and confidently assess the capacity of the WCS to allow new development without the risk of sanitary overflows.

• The permanent flow monitoring system should be used in conjunction with the WCS inspection program (Opinion 10) to help identify GWI and RDII which is indicative of deteriorating pipes, manholes, and laterals.

• The City's consultants have recommended the City install continuous or permanent flow monitors.[128]

• The City should re-visit the WCS hydraulic computer modeling every five years using the updated flow data and information from the SSAMP.

---

[127] City of St. Petersburg, Wastewater Program Management and Integrated Water Resources Planning, Appendix A - Scope of Services.

[128] CH2M Phase II

*Opinion 17: The City should be required to implement all recommendations in the IWRMP that pertain to the wastewater system capacity, R&R, spill reduction and City management.*

- **Basis for Opinion 17:**
- Opinions 1, 2, 3, 4, 6, 7 and 9 and Basis for Opinions 1, 2, 3, 4, 6, 7 and 9
- The 2017 FDEP CO contains no requirement that the City implement any recommendations in the IWRMP.
- The IWRMP will not contain any requirements.  It will provide recommendations and the City can then decide which ones it wishes to implement, consistent with budget and desired Level of Service.[129]
- When the City was left to its own discretion concerning infrastructure in the past, at the expiration of the prior 2000 FDEP CO, the system was neglected, poor decisions were made, and this all led to SSOs. The City's management reviews confirm this history.
- The IWRMP should incorporate the LA Consulting recommendations concerning management, and staffing issues.

*Option 18: The City should be required to implement additional measures appearing in its CMOM dated April 30, 2018, within six months.*

**Basis for Opinion 18:**
- Opinions 1, 2, 3, 4, 7, 10, 11, 12, 13, 14, 15, and 16 and Basis for Opinions 1, 2, 3, 4, 7, 10, 11, 12, 13, 14, 15, and 16
- The 2017 FDEP CO contains no requirement that the City implement any of the recommendations in its CMOM.
- Implementing the measures described in the CMOM will help the City reduce SSOs.
- The City should implement and adhere to the Capacity Assurance Programs and New Connection Tap-In Program identified in the CMOM.

---

[129] City of St. Petersburg, Wastewater Program Management and Integrated Water Resources Planning, Appendix A - Scope of Services.

- The City should continue to upgrade its Management Information System, including automated work orders, record retention, and integration with GIS/mapping, maintain a full stocked warehouse, and continue its root control program.
- The Water Resources Grease Management Program should include frequent communications between FSE inspectors and the WCS maintenance personnel.

***Opinion 19: The City should implement measures to address private laterals as a significant source of its I/I problem.***

**Basis for Opinion 19:**
- Opinions 1, 3, 4 and 7 and Basis for Opinions 1, 3, 4 and 7
- The FDEP 2017 CO does not require the City do take any measures with respect to private laterals beyond enacting an ordinance of undefined terms.
- The City recognizes that private laterals are a recognized significant contributor to GWI and RDII within the WCS.[130] [131]
- The City's actions to-date toward the recognized contribution of private laterals to its inflow and infiltration have encompassed studying and planning.  Earlier action is needed concerning the private lateral issue.
- The City should take immediate steps to address the contribution of private laterals to GWI and RDII City-wide and well before the 2022 date in the 2017 FDEP CO.
- There are numerous examples from municipalities across the Country that have proven successful with respect to private laterals.[132] [133]

---

[130] CH2M Phase I.

[131] City of St. Petersburg, CMOM Update Report, April 30, 2018.

[132] CleanWater Institute, Inflow/Infiltration in Satellite Systems, January 10, 2018.

[133] East Bay Regional Private Sewer Lateral Program, http://www.eastbaypsl.com/eastbaypsl/, last accessed May 18, 2018.

***Opinion 20: SSOs, weather or not they reach surface waters, pose a threat to human health.***

**Basis for Opinion 20:**

- The United States Environmental Protection Agency has recognized that "… SSOs can cause or contribute to human health impacts. Microbial pathogens and toxics can be present in [combined sewer overflows] CSOs and SSOs at levels that pose a risk to human health."[134]

- Exposures to WBSD's SSOs occur in recreational waters and contact with SSOs. Exposure in recreational waters can occur through ingestion and direct contact. Exposure from direct contact with SSOs is generally dermal.[135]

- Pathogenic bacteria commonly found in SSOs include: *Campylobacter*, which causes food poisoning (*E. coli* is a common species of *Campylobacter*); *Salmonella*, which causes typhoid fever and other enteric diseases; *Shigella*, which causes food poisoning; and *Vibrio cholera*, which causes cholera.[136] Over 120 intestinal viruses may be found in SSOs including: poliovirus, infectious hepatitis virus, and Coxsackie virus.[137]

- Pathogens in SSOs, either through direct contact or recreational uses, can cause a wide variety of infections other than gastrointestinal infections, including skin, ear, eye, and wound infections.[138]

***Opinion 21: The City should conduct an exfiltration study to identify and evaluate any areas where there is potential for sewage exfiltration and surface water or MS4 cross-contamination.***

**Basis for Opinion 21:**

- Opinions 1, 3, and 4 and Basis for Opinions 1, 3, and 4

---

[134] United States Environmental Protection Agency, Report to Congress – Impacts and Control of CSOs and SSOs (EPA 833-R-04-001), August 2004.

[135] *Ibid.*

[136] *Ibid*

[137] *Ibid*

[138] Centers for Disease Control and Prevention, Recreational Water Illnesses, https://www.cdc.gov/healthywater/swimming/swimmers/rwi.html.

45

- During sewer pipe conditions assessments, the City should identify defects relative to exfiltration potential (e.g. large cracks, bad joints).

- When replacing sewer pipes in basins with known bacterial water quality problems, visually inspect soils and document any evidence of exfiltration.

- Collect and analyze shallow groundwater samples in known problem areas where bacterial indicators are consistently elevated in surface water bodies and human biomarkers are present.

**5.0 Avoid and Delayed Costs**

*Opinion 22: The City avoided costs by waiting until 2016 to take firm steps to reduce SSOs.*

- Opinions 1, 2, 3, 4, and 6 and Basis for Opinions 1, 2, 3, 4, and 6
- The City should have taken steps under the 2000 FDEP CO, and the City should have taken further steps to increase capacity or remove I/I after Tropical Storm Debbie in 2012, when it became clear that the City was not able to handle high flows during wet weather events and substantial I/I.
- Had the City initiated its efforts in 2012, or earlier, instead of waiting until 2016, it would not have had so many SSOs in 2015 and 2016 related to wet weather events.
- The City has chosen to address its SSO problem by increasing capacity at the WRFs rather than focus on I/I reduction, which should have commenced in 2012 after TS Debbie.[139] [140]    Those costs should have been spent four years earlier.
- There was a lack of urgency in the City's response to wet weather events until at least after September 2016.

*Opinion 23: The City avoided costs by not adhering to a program of CCTV inspection of all of its pipes and routine inspection of its manholes and avoiding taking corrective action on pipes found to be experiencing infiltration.*

**Basis for Opinion 23:**
- Opinions 1, 3, 4, 10, and 11 and Basis for Opinions 1, 3, 4, 10, and 11

---

[139] CH2M Phase I.

[140] CH2M Phase II.

46

- The City should have always been using CCTV inspection with full PACP and MACP coding following NASSCO guidelines to determine the full condition of its pipes and then immediately lining, repairing or replacing leaky pipes discovered during those inspections.
- Although needed earlier, the City should have commenced robust CCTV inspection of all of its pipes after experiencing high flows after Tropical Storm Debbie in 2012, indicative of a persistent I/I problem.
- The City's CCTV inspections reduce substantially after expiration of the 2000 FDEP CO, from 100 miles (or 10%) per year on average 2000 through 2011 to 60 miles (or 7%) per year on average from 2012 through 2016.[141]
- By not taking measures to fully inspect its system with CCTV, the City avoided costs.
- Table 6 details the costs avoided and the basis for my estimates.
- The current $14 million dollars allocation in the 2017 FDEP CO for pipe lining and manhole repair over a 5 year period does not address all estimated defects and contains no specific requirement about I/I reduction objectives.

---

In summary, as described above and in the supporting materials, which include my cited references and other relevant materials I have reviewed, the City has failed to meet the basic planning, investment, operation and maintenance requirements of its sewerage system for many years. A number of measures described in my report are necessary to bring the City's system into compliance with applicable law.

*Thomas J Christ*

Thomas J. Christ, P.E.

---

[141] Exhibit A to City of St. Petersburg's Responses to Plaintiffs' First Set of Interrogatories.

47

Exhibit 9

to the

Declaration of Kathryn Schmidt

In Support of

Plaintiffs' Motion for Attorneys'
Fees and Costs

Suncoast Waterkeeper et al. v. City of St.
Petersburg Case No. 8:16-cv-03319-JDW-AEP

**EXPERT OPINION**
*on*
**Economic Benefit**
*and*
**Economic Impact**

*In:*

**Suncoast Waterkeeper,**
**Our Children's Earth Foundation, and**
**Ecological Rights Foundation**
**v.**
**City of St. Petersburg**

United States District Court
Middle District of Florida
Tampa Division
Case No. 8:16-cv-03319-JDW-AEP

*Submitted on:*
May 18, 2018

*Expert Report of:*
Jonathan S. Shefftz

d/b/a JShefftz Consulting
14 Moody Field Road
Amherst MA 01002

## TABLE OF CONTENTS

Sections:
1.    Summary of Opinion
2.    Basis for Opinion:  Professional Expertise and Materials Considered
3.    Basis for Opinion:  Financial Gain / Economic Benefit
      a.    Case-Specific Background
      b.    General Concepts and Probability Adjustments
      c.    Financial Economic Methodology:  Time Value of Money and Present Values
      d.    Financial Economic Methodology:  Rate for Present Value Adjustments, Basis
      e.    Financial Economic Methodology:  Rate for Present Value Adjustments, Results
      f.    Case-Specific Economic Benefit Inputs and Calculation Components
      g.    Case-Specific Economic Benefit Calculations and Results
4.    Basis for Opinion:  Economic Impact
      a.    Wastewater Household Bill Comparison with Other Florida Systems
      b.    U.S. EPA Sewer Overflow Financial Capability Assessment
5.    Qualifications and Compensation


Attachment A:
      Curriculum Vitae
      (including publications and public presentations for at least the last ten years and
      testimony history for at least the last four years)


Tables:
1.    Weighted-Average Cost of Capital
2.    Economic Benefit from Delayed Compliance Measures:  Consent Order
3.    Economic Benefit from Delayed Compliance Measures:  Plaintiffs' Engineering Expert
4.    Summary of Economic Benefit Calculations
5.    Sewer Rate Comparison with Other Florida Systems
6.    St. Petersburg Bill Projections and Percent of Household Income
7.    U.S. EPA Financial Capability Indicators
8.    U.S. EPA Financial Capability Matrix

g.    **Case-Specific Economic Benefit Calculations and Results**

Table 4 below provides a summary of my individual economic benefit calculations by combining the present values from the different cost items as calculated in Table 2 and Table 3. All of my calculations and results should be replicable within a reasonable approximation for any analyst. (These results are very similar to those that would be obtained by running the U.S. EPA BEN economic benefit model.)

| Table 4 | | |
|---|---|---|
| **SUMMARY OF ECONOMIC BENEFIT CALCULATIONS** | | |
| *Present Values as of:* 18-May-18 | | |
| Description | Economic Benefit | *Monthly Increase* |
| 6a   WRF SW Splitter Box/Disk Filters | $1,216,619 | *$3,291* |
| 6b   WRF SW Capacity Imps. | $433,230 | *$1,172* |
| 6c   WRF NW Effluent Filter | $332,594 | *$900* |
| 6d   WRF NW Injection Well | $446,715 | *$1,208* |
| 6e   WRF Masterplan | $122,651 | *$332* |
| 6e   Master Plan Contingency | $1,490,711 | *$4,032* |
| 6f   Albert Whitted Decision | | |
| 6g   Wet Wx Flow Mitigation Prog | $90,214 | *$244* |
| 6h   Pipe Lining, Replacement, and Manhole Rehab | $234,900 | *$635* |
| 6i   Manhole Rehab and CIPP Lining Contracts | $385,368 | *$1,042* |
| Plaintiff's Engineering Expert (from Table 3) | $12,667,624 | *$34,265* |
| **Totals:** | **$17,420,626** | ***$47,122*** |
| *Economic benefit calculated for each Table:* | | |
| *2  = column (p) minus column (i)* | | |
| *3  = column (l) minus column (g)* | | |

As shown in Table 4, based on my analysis of compliance measures and associated cost estimates that have been identified both by the City and by Plaintiffs' engineering expert, the City's economic benefit from failing to implement these measures at an earlier point in time is approximately $17.4 million.

20

## 5.    Qualifications and Compensation

As previously noted under the section entitled Basis for Opinion, I have separately provided my Curriculum Vitae as this report's Attachment A, which also includes a list of my publications and public presentations going back at least ten years and testimony experience going back at least four years. I receive compensation of $176 per hour for the time that I have spent preparing this report. and for testimony would receive $231 per hour.

I declare under the penalty of perjury that the statements in this report are true and accurate to the best of my knowledge.

# Jonathan S. Shefftz

Digitally signed by Jonathan S. Shefftz
DN: cn=Jonathan S. Shefftz, o=JShefftz Consulting, ou, email=jss@JShefftzConsulting.com, c=US
Date: 2018.05.18 16:25:34 -04'00'

30

Exhibit 10

to the

Declaration of Kathryn Schmidt

In Support of

Plaintiffs' Motion for Attorneys'
Fees and Costs

Suncoast Waterkeeper et al. v. City of St.
Petersburg Case No. 8:16-cv-03319-JDW-AEP

BEFORE THE STATE OF FLORIDA
DEPARTMENT OF ENVIRONMENTAL PROTECTION

| | | |
|---|---|---|
| STATE OF FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, | ) ) ) | IN THE OFFICE OF THE SOUTHWEST DISTRICT |
| Complainant, | ) ) ) | |
| vs. | ) ) | OGC FILE NO. 97-0134 |
| CITY OF ST. PETERSBURG, | ) ) ) | |
| Respondent. | ) ) ) | |

CONSENT ORDER

This Consent Order is entered into between the State of Florida Department of Environmental Protection ("Department") and the City of St. Petersburg ("City") to reach settlement of certain matters at issue between the Department and the City.

The Department alleges and the City neither admits nor denies the following:

1.    The Department is the administrative agency of the State of Florida having the power and duty to protect Florida's air and water resources and to administer and enforce the provisions of Chapter 403, Florida Statutes, and the rules promulgated thereunder, Title 62, Florida Administrative Code.   The Department has jurisdiction over the matters addressed in this Consent Order.

2.    The City is a municipal corporation in the State of Florida and a person within the meaning of Section 403.031(5), Florida Statutes.

3.    The City is the owner and operator of the following wastewater treatment facilities ("Facilities") and associated wastewater collection/transmission systems ("Systems") serving the City and other portions of Pinellas County:

| | |
|---|---|
| Albert Whitted Water Reclamation Facility | 601 - 8th Ave. S.E. |
| Northeast Water Reclamation Facility | 1160 - 62nd Ave. N.E. |
| Northwest Water Reclamation Facility | 7500 - 26th Ave. No. |

Southwest Water Reclamation Facility          3800 - 54th Ave. So.

4.    The Facilities are further described as follows:

a.    Albert Whitted Water Reclamation Facility, a 12.4 million gallon per day conventional activated sludge municipal sewage treatment plant operated under Department Permit No. DT52-248470 and NPDES Permit No. FL0040444. On May 31, 1995, pursuant to NPDES delegation, the Department issued an Order consolidating the permits into Wastewater Permit No. FL0040444.

b.    Northeast Water Reclamation Facility, a 16 million gallon per day conventional activated sludge municipal sewage treatment plant operated under Department Permit No. DT52-248469 and NPDES Permit No. FL0040479. On May 31, 1995, pursuant to NPDES delegation, the Department issued an Order consolidating the permits into Wastewater Permit No. FL0040479.

c.    Northwest Water Reclamation Facility, a 20 million gallon per day conventional activated sludge municipal sewage treatment plant formerly operated under Department Permit No. DO52-176356 and NPDES Permit No. FL0040452. On May 31, 1995, pursuant to NPDES delegation, the Department issued an Order consolidating the permits into Wastewater Permit No. FL0040452. On July 30, 1999, Department Permit No. FLA128821-01 was issued replacing Permit No. FL0040452.

d.    Southwest Water Reclamation Facility, a 20 million gallon per day conventional activated sludge municipal sewage treatment plant operated under Department Permit No. DT52-248468 and NPDES Permit No. FL0040461. On May 31, 1995, pursuant to NPDES delegation, the Department issued an Order consolidating the permits into Wastewater Permit No. FL0040461.

5.    On August 18, 1995, the Department issued Warning Letter No. 950026DW52SWD to the City, alleging the unpermitted discharge of wastewater and effluent from several of the Facilities and Systems into waters of the State and/or into adjacent canals, ditches and ponds that are connected to waters of the State. These unpermitted discharges occurred on August 2, 1995 through August 10, 1995 and released approximately 15.6 million gallons of untreated wastewater

2

and effluent.    The City timely reported these wet weather discharges to the Department.  After further investigation, it appears that approximately 25 - 54 million gallons of untreated wastewater and effluent were discharged.  The Warning Letter is attached as Exhibit 1.

6.    On August 22, 1995, and during subsequent meetings, the Department and the City met to discuss the unpermitted discharges.  In addition, during these subsequent meetings, the Department and the City discussed protocols for the reporting of wastewater spills from the City's Systems, protocols for the reporting of unauthorized wastewater discharges from the City's Facilities, and protocols for water quality sampling in response to unauthorized discharges.

7.    During the months December 1997 through March 1998, the City experienced a number of chronic rainfall events exceeding record levels.  Millions of gallons of wastewater and effluent were discharged from the City's Systems and from the City's Facilities to State waters and/or into canals, ditches and ponds that are connected to waters of the State.   The Systems and Facilities were not authorized by the Department to discharge to State waters.  Over the previous year, City staff had performed a substantial amount of cleaning of the wastewater collection/transmission systems to better enable the Systems to handle a greater volume of flow.  However, the Systems and Facilities were not designed to handle the record levels of rainfall.

8.    Since 1995 the City has reported a number of Facility discharges and wastewater overflows from the Systems, some of which may constitute unauthorized discharges.  This Consent Order addresses all such reported Facility discharges and wastewater overflows from the Systems except for those previously identified in other warning notices from the Department to the City prior to the effective date of this Consent Order.

9.    On September 15, 1995, the City submitted to the Department a preliminary scope of work for a Sanitary Sewer Evaluation Study ("SSES").  The purpose of the SSES was to formally evaluate and develop recommendations to minimize wastewater overflows from the City's wastewater collection/transmission

systems and prevent unauthorized effluent discharges from the Facilities. The SSES was conducted as a two phased study. On October 5, 1995, the City hired Tampa Bay Engineering to conduct Phase I of the SSES. A finalized Task Order (scope of work) for Phase I of the SSES was submitted to the Department on October 27, 1995. Phase I included an Immediate Action Plan that was developed to minimize wastewater overflows in known critical areas of the City's wastewater collection/transmission systems during wet weather conditions. On February 1, 1996, the City authorized Tampa Bay Engineering to conduct Phase II of the SSES. Phase II included a Long Term Program that was developed to minimize wastewater overflows in the City's entire wastewater collection/transmission systems and develop recommendations for operation and maintenance as well as capital improvements. The City completed the SSES on the schedule outlined in the Task Order and any subsequent amendments thereto. On March 31, 1998, a Final Report titled "Sewer System Evaluation and Management Program" ("Final Report") was received by the Department from the City summarizing recommendations to implement the Immediate Action Plan and Long Term Program contained in Phase I and II. In general, the Final Report estimated costs for annual maintenance activities to the City's entire wastewater collection/transmission systems at $2,800,000 per year; the estimated costs for capital improvements, including collection/transmission systems, at $64,847,000. Tampa Bay Engineering recommended the implementation of Phase I and II over 10 years. A copy of the Final Report is incorporated herein and attached as Exhibit 2.

10. On August 3, 1998, the Department received from the City a draft of an Implementation Plan to Minimize Sanitary Sewer Overflows ("Plan"). The Plan proposes to implement construction improvements and rehabilitation to the Systems and Facilities over the next five years to significantly reduce wastewater overflows and unpermitted effluent discharges. A copy of the Plan is incorporated herein and attached as Exhibit 3.

11. The City has budgeted $7,872,000 in the City's fiscal year 2000 budget for wastewater collection/transmission systems rehabilitation and

improvements.    Another $33,900,000 is budgeted for capital improvements between fiscal years 2001 and 2004.

The Department and the City have agreed to enter into this Consent Order. The entry into this agreement does not constitute an admission by the City to any violations but is being agreed to for the purpose of mutually resolving the disagreement and avoiding any further litigation and cost.    Nonetheless the City agrees to be bound by the terms of this Consent Order.    Having reached a resolution of the matter, the City and the Department mutually agree and it is,

ORDERED:

12.    a.    Upon the effective date of this Consent Order and for a period of ten years, the City, subject to the provisions in Paragraph 12b., shall budget appropriate monies, implement, and complete the recommendations for improvements to the Facilities and Systems as set forth in the Final Report. Notwithstanding, the City's failure to properly budget or appropriate funds will not act to relieve or excuse the City for the non performance of its obligations hereunder.    Moreover, the City shall immediately initiate the capital improvements, as identified in the Plan, and shall complete the capital improvements within seven years of the effective date of this Consent Order.    Each year the City shall submit a written report ("Implementation Report") to the Department summarizing the status of implementing the Plan and the Final Report and proposing any modifications to the Plan deemed essential to minimize wastewater overflows from the Systems and Facilities.    Any modifications to the Plan are subject to Department approval.    The Implementation Report shall also include a projection of the work to be performed during the following year.    The Implementation Report shall be due each year by April 15th for the ten-year term.

b.    The City is subject to Florida Statute 166.241 which makes it unlawful for a municipality "...to contract for expenditures in any fiscal year except in pursuance of budgeted appropriations."    However, within the constraints of this limitation, the City does hereby covenant that for each fiscal year of the Consent Order, after budgeting and appropriating for essential City services and then

existing legal obligations, it will budget and appropriate from legally available funds, sufficient monies to fund its obligations under this agreement for each fiscal year. The obligations of the City hereunder shall not be or constitute a general indebtedness of the City within the meaning of the Constitution.

13.    Upon the effective date of this Consent Order, the City shall report to the Department all unpermitted wastewater and effluent discharges from the Systems and the Facilities as soon as possible, but within 24 hours from the time the City becomes aware, as required by Florida Administrative Code Rules 62-604.550 and 62-620.610(20), respectively. Moreover, upon the effective date of this Consent Order, the City shall respond to unpermitted wastewater and effluent discharges and institute water quality sampling in the affected areas of any unpermitted discharges in accordance with the City Wastewater/Reclaimed Water Discharge Response Plan attached hereto and incorporated by reference herein as Exhibit 4.

14.    Within 30 days of the effective date of this Consent Order, the City shall pay the Department $5,000 for costs and expenses incurred by the Department during the investigation of this matter and the preparation and tracking of this Consent Order. Payment shall be made by cashier's check, money order, or City check. The instrument shall be made payable to the "Department of Environmental Protection" and shall include thereon the OGC number assigned to this Consent Order and the notation "Ecosystem Management and Restoration Trust Fund". The payment shall be sent to the Department of Environmental Protection, Southwest District Office, 3804 Coconut Palm Drive, Tampa, Florida 33619-8318.

15.    In settlement of the matters addressed in this Consent Order, the City shall pay the Department $391,533 in civil penalties for alleged violations of Section 403.161, Florida Statutes, and the Department's rules. In lieu of making a cash payment of the civil penalties set forth herein, the City has elected to implement a number of in-kind penalty projects. The total value of the in-kind penalty projects shall be at least one and a half times the civil penalty, which in this

case is the equivalent of at least $587,300. Pursuant to the Department's policy, the City has submitted an in-kind penalty project proposal (the "projects"), consisting of an educational seminar project, a reclaimed water study project, a nuisance species removal project, and a pollution prevention education project. The projects were approved by the Department on December 10, 1999, and are incorporated herein and attached as Exhibit 5. Any approved projects implemented after this approval, but prior to execution of this Consent Order shall count towards fulfillment of the in-kind penalty. The City shall complete one or more of the approved projects having an aggregate cost of at least $587,300 within five years of the effective date of this Consent Order.

16. Upon the effective date of this Consent Order, the City shall comply with the following actions:

a. The projects as submitted in the City's December 1999 proposal and the schedule contained therein are incorporated into this Consent Order and enforceable hereunder.

b. Within 90 days of the effective date of this Consent Order and every six months thereafter, the City shall provide the Department with status reports ("Project Reports"), documenting the progress being made on the implementation of the projects.

c. During the implementation of the projects, the City shall place appropriate sign(s) at the project sites indicating that the City's involvement with the project is the result of a Department enforcement action. The City may remove the sign(s) after the project has been completed. However, after the project has been completed the City shall not post any sign(s) at the site indicating that the reason for the project was anything other than a Department enforcement action. If a specific project does not involve a physical site, then other similar type of public notification shall be required.

d. In the event the City fails to timely submit any requested information or documentation required by the Consent Order to the Department, fails to complete implementation of the in-kind projects or otherwise fails to comply

7

with any provision of this paragraph, the in-kind penalty payment option shall be forfeited and the entire amount of civil penalties, less any money spent for a completed project, shall be due from the City to the Department within 30 days of notice.

e.    Within 30 days of completing a project, the City shall notify the Department in writing, of the project completion and request a verification letter from the Department.  The City shall submit supporting information verifying that the project was completed in accordance with the approved proposal and documentation showing the actual costs incurred to complete the project.  If the actual costs incurred in completing the projects are less than $587,300, the City shall remit cash payment of two-thirds of the difference to the Department within 30 days of completion of the projects.

f.    If upon review of the notification of completion, the Department determines that the project(s) cannot be accepted due to incompleteness or substantial deviation from the approved project(s) the City shall be notified in writing and given an opportunity to correct any deficiencies.  Otherwise, the Department shall provide a letter to the City acknowledging completion of the project.

17.    Upon the effective date of this Consent Order, the City shall pay the Department stipulated penalties for any discharges of wastewater from the Systems to State waters, which do not qualify as excuseable discharges.  The City shall pay stipulated penalties as follows:

| Amount per day per discharge | Discharge Volume |
| --- | --- |
| $500 | up to 5,000 gallons |
| $1,000 | 5,001 to 10,000 gallons |
| $2,500 | 10,001 to 25,000 gallons |
| $5,000 | 25,001 to 100,000 gallons |
| $10,000 | in excess of 100,000 gallons |

with a maximum cumulative penalty of $30,000 per day. Each payment shall be received within 30 days of written demand from the Department. Payment shall be made by cashier's check, money order, or City check. The instrument shall be made payable to the "Department of Environmental Protection" and shall include thereon the OGC number assigned to this Consent Order and the notation "Ecosystem Management and Restoration Trust Fund". The payment shall be sent to the Department of Environmental Protection, Southwest District Office, 3804 Coconut Palm Drive, Tampa, Florida 33619-8318. The Department may make demands for payment at any time after violations occur. Nothing in this paragraph shall prevent the Department from filing suit to specifically enforce any of the terms of this Consent Order. Any penalties assessed under this paragraph shall be in addition to the settlement sum agreed to in paragraph 15 of this Consent Order. If the Department is required to file a lawsuit to recover stipulated penalties under this paragraph, the Department will not be foreclosed from seeking civil penalties for violations of this Consent Order in an amount greater than the stipulated penalties due under this paragraph. The City hereby expressly reserves all of its legal rights and defenses if any such legal action for civil penalties is filed.

For purposes of this Consent Order, an excuseable discharge is a discharge that resulted from a temporary, exceptional incident that was beyond the reasonable control of the City. Incidents beyond the reasonable control of the City would include:

a. Exceptional acts of nature, including a 10 year 24 hour storm event.

b. Third party actions that could not be reasonably prevented, including vandalism.

c. Blockages that could not be avoided by reasonable measures.

d. Unforeseeable sudden structural, mechanical, or electrical failure that could not be avoided by reasonable measures.

18. The City agrees to pay the Department stipulated penalties in the amount of $100 per day for each of the 1st through the 10th days, and $500 per day for each and every day after the 10th day, with a maximum cumulative annual

penalty of $50,000, that the City fails to timely comply with any of the actions or time frames of paragraphs 12 through 16 of this Consent Order, unless an extension of time has been granted by the Department pursuant to the terms of this Consent Order. A separate stipulated penalty shall be assessed for each violation of this Consent Order. Within 30 days of written demand from the Department, the City shall make payment of the appropriate stipulated penalties to the "Department of Environmental Protection" by cashier's check, money order, or City check and shall include thereon the OGC number assigned to this Consent Order and the notation "Ecosystem Management and Restoration Trust Fund". Payment shall be sent to the Department of Environmental Protection, Southwest District Office, 3804 Coconut Palm Drive, Tampa, Florida 33619-8318. The Department may make demands for payment at any time after violations occur, and the Department shall make an effort to timely notify the City in writing of violations after the Department has actual notice of such violation. Nothing in this paragraph shall prevent the Department from filing suit to specifically enforce any of the terms of this Consent Order. Any penalties assessed under this paragraph shall be in addition to the settlement sum agreed to in paragraph 15 of this Consent Order. If the Department is required to file a lawsuit to recover stipulated penalties under this paragraph, the Department will not be foreclosed from seeking civil penalties for violations of this Consent Order in an amount greater than the stipulated penalties due under this paragraph. The City hereby expressly reserves all of its legal rights and defenses if any such legal action for civil penalties is filed.

19. If any event, including administrative or judicial challenges by third parties unrelated to the City, occurs which causes delay or the reasonable likelihood of delay, in complying with the requirements or deadlines of this Consent Order, the City shall have the burden of proving the delay was or will be caused by circumstances beyond the reasonable control of the City and could not have been or cannot be overcome by the City's due diligence. Economic circumstances shall not be considered circumstances beyond the control of the City, nor shall the failure of a contractor, subcontractor, materialman or other agent (collectively referred to

10

as "contractor") to whom responsibility for performance is delegated to meet contractually imposed deadlines be a cause beyond the control of the City, unless the cause of the contractor's late performance was also beyond the contractor's control. Upon occurrence of an event causing delay, or upon becoming aware of a potential for delay, the City shall notify the Department orally within 24 hours or by the next working day and shall, within seven calendar days of oral notification to the Department, notify the Department in writing of the anticipated length and cause of delay, the measures taken or to be taken to prevent or minimize the delay and the timetable by which the City intends to implement these measures. If the parties can agree that the delay or anticipated delay has been or will be caused by circumstances beyond the reasonable control of the City, the time for performance hereunder shall be extended for a period equal to the agreed delay resulting from such circumstances. Such agreement shall adopt all reasonable measures necessary to avoid or minimize delay. Failure of the City to comply with the notice requirements of this paragraph in a timely manner shall constitute a waiver of the City's right to request an extension of time for compliance with the requirements or deadlines of this Consent Order.

20.    The City shall publish the following notice in a newspaper of daily circulation in Pinellas County, Florida. The notice shall be published one time only within14 days after the effective date of the Consent Order by the Department. A copy of the notice shall be provided by the City to the Department within ten days of publication.

<u>STATE OF FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION</u>
<u>NOTICE OF CONSENT ORDER</u>

The Department of Environmental Protection gives notice of agency action of entering into a Consent Order with the City of St. Petersburg pursuant to Section 120.57(4), Florida Statutes. The Consent Order addresses alleged unpermitted wastewater and effluent discharges from the City's wastewater reclamation

11



facilities and associated wastewater collection/transmission systems to State waters, and the implementation plan to minimize further discharges. The Consent Order is available for public inspection during normal business hours, 8:00 a.m. to 5:00 p.m., Monday through Friday, except legal holidays, at the Department of Environmental Protection, Southwest District Office, 3804 Coconut Palm Drive, Tampa, Florida 33619-8318.

Persons whose substantial interests are affected by this Consent Order have a right to petition for an administrative hearing on the Consent Order. The Petition must contain the information set forth below and must be filed (received) in the Department's Office of General Counsel, 3900 Commonwealth Boulevard, MS-35, Tallahassee, Florida 32399-3000, within 21 days of receipt of this notice. A copy of the Petition must also be mailed at the time of filing to the District Office named above at the address indicated. Failure to file a petition within the 21 days constitutes a waiver of any right such person has to an administrative hearing pursuant to Sections 120.569 and 120.57, Florida Statutes.

The petition shall contain the following information: (a) The name, address, and telephone number of each petitioner; the Department's identification number for the Consent Order and the county in which the subject matter or activity is located; (b) A statement of how and when each petitioner received notice of the Consent Order; (c) A statement of how each petitioner's substantial interests are affected by the Consent Order; (d) A statement of the material facts disputed by petitioner, if any; (e) A statement of facts which petitioner contends warrant reversal or modification of the Consent Order; (f) A statement of which rules or statutes petitioner contends require reversal or modification of the Consent Order; (g) A statement of the relief sought by petitioner, stating precisely the action petitioner wants the Department to take with respect to the Consent Order.

If a petition is filed, the administrative hearing process is designed to formulate agency action. Accordingly, the Department's final action may be different from the position taken by it in this Notice. Persons whose substantial interests will be affected by any decision of the Department with regard to the

12

subject Consent Order have the right to petition to become a party to the proceeding. The petition must conform to the requirements specified above and be filed (received) within 21 days of receipt of this notice in the Office of General Counsel at the above address of the Department. Failure to petition within the allowed time frame constitutes a waiver of any right such person has to request a hearing under Sections 120.569 and 120.57, Florida Statutes, and to participate as a party to this proceeding. Any subsequent intervention will only be at the approval of the presiding officer upon motion filed pursuant to Rule 28-106.205, Florida Administrative Code.

A person whose substantial interests are affected by the Consent Order may file a timely petition for an administrative hearing under Sections 120.569 and 120.57, Florida Statutes, or may choose to pursue mediation as an alternative remedy under Section 120.573, Florida Statutes, before the deadline for filing a petition. Choosing mediation will not adversely affect the right to a hearing if mediation does not result in a settlement. The procedures for pursuing mediation are set forth below.

Mediation may only take place if the Department and all the parties to the proceeding agree that mediation is appropriate. A person may pursue mediation by reaching a mediation agreement with all parties to the proceeding (which include the City, the Department, and any person who has filed a timely and sufficient petition for a hearing) and by showing how the substantial interests of each mediating party are affected by the Consent Order. The agreement must be filed in (received by) the Office of General Counsel of the Department at 3900 Commonwealth Boulevard, Mail Station 35, Tallahassee, Florida 32399-3000, within 10 days after the deadline as set forth above for the filing of a petition.

The agreement to mediate must include the following:

(a) The names, addresses, and telephone numbers of any persons who may attend the mediation;

(b) The name, address, and telephone number of the mediator selected by the parties, or a provision for selecting a mediator within a specified time;

(c)   The agreed allocation of the costs and fees associated with the mediation;

(d)   The agreement of the parties on the confidentiality of discussions and documents introduced during mediation;

(e)   The date, time, and place of the first mediation session, or a deadline for holding the first session, if no mediator has yet been chosen;

(f)   The name of each party's representative who shall have authority to settle or recommend settlement; and

(g)   Either an explanation of how the substantial interests of each mediating party will be affected by the action or proposed action addressed in this notice of intent or a statement clearly identifying the petition for hearing that each party has already filed, and incorporating it by reference.

(h)   The signatures of all parties or their authorized representatives.

As provided in Section 120.573, Florida Statutes, the timely agreement of all parties to mediate will toll the time limitations imposed by Sections 120.569 and 120.57, Florida Statutes, for requesting and holding an administrative hearing. Unless otherwise agreed by the parties, the mediation must be concluded within sixty days of the execution of the agreement. If mediation results in settlement of the administrative dispute, the Department must enter a final order incorporating the agreement of the parties. Persons whose substantial interests will be affected by such a modified final decision of the Department have a right to petition for a hearing only in accordance with the requirements for such petitions set forth above, and must therefore file their petitions within 21 days of receipt of this notice. If mediation terminates without settlement of the dispute, the Department shall notify all parties in writing that the administrative hearing processes under Sections 120.569 and 120.57, Florida Statutes, remain available for disposition of the dispute, and the notice will specify the deadlines that then will apply for challenging the agency action and electing remedies under those two statutes.

21.   With regard to any determination made by the Department regarding implementation of the requirements of this Consent Order, if the City objects to the

14

Department's determination, the City may file a petition for an administrative hearing pursuant to Sections 120.569 and 120.57, Florida Statutes. The City shall have the burden to establish the inappropriateness of the Department's determination. The petition must conform with the requirements of Florida Administrative Code Rule 28-106.201, and must be filed (received) in the Department's Office of General Counsel, 3900 Commonwealth Boulevard, MS-35, Tallahassee, Florida 32399-3000, within 21 days after receipt of written notice from the Department of any determination the City wishes to challenge. Failure to file a petition within the 21 days shall constitute a waiver by the City of its right to request an administrative proceeding pursuant to Sections 120.569 and 120.57, Florida Statutes. The Department's determination, upon expiration of the 21 day time period if no petition is filed, or the Department's Final Order as a result of the filing of a petition subsequent to any appeals of the Final Order, shall be incorporated by reference into this Consent Order and made a part of it. All other aspects of the Consent Order shall remain in full force and effect at all times. If the City seeks an administrative proceeding pursuant to this paragraph, the Department may file suit against the City to obtain judicial resolution of all the issues unresolved at the time of the request for administrative proceeding.

22.    Entry of this Consent Order does not relieve the City of the need to comply with applicable federal, state or local laws, regulations or ordinances.

23.    The terms and conditions set forth in this Consent Order may be enforced in a court of competent jurisdiction pursuant to Sections 120.69 and 403.121, Florida Statutes. Failure to comply with the terms of this Consent Order shall constitute a violation of Section 403.161(1)(b), Florida Statutes.

24.    The City is fully aware that a violation of the terms of this Consent Order may subject the City to judicial imposition of damages, civil penalties up to $10,000.00 per day per violation, and criminal penalties.

25.    The City shall allow all authorized representatives of the Department access to the Facilities and Systems at reasonable times for the purpose of determining compliance with this Consent Order and the rules of the Department.

26. All plans, applications, penalties, costs and expenses, and information required by this Consent Order to be submitted to the Department should be sent to Thomas Gucciardo, Environmental Manager, Florida Department of Environmental Protection, Southwest District Office, 3804 Coconut Palm Drive, Tampa, Florida 33619-8318.

27. The Department hereby expressly reserves the right to initiate appropriate legal action to prevent or prohibit any violations of applicable statutes, or the rules promulgated thereunder that are not specifically addressed by the terms of this Consent Order.

28. The Department, for and in consideration of the complete and timely performance by the City of the obligations agreed to in this Consent Order, hereby waives its right to seek judicial imposition of damages or civil penalties for alleged violations through the date of the filing of this Consent Order as addressed in this Consent Order.

29. The provisions of this Consent Order shall apply to and be binding upon the parties, their officers, their directors, agents, servants, employees, successors, and assigns and all persons, firms and corporations acting under, through or for them and upon those persons, firms and corporations in active concert or participation with them.

30. No modifications of the terms of this Consent Order shall be effective until reduced to writing and executed by both the City and the Department.

31. This Consent Order is a settlement of the Department's civil and administrative authority arising under Florida law to resolve the matters addressed herein. This Consent Order is not a settlement of any criminal liabilities which may arise under Florida law, nor is it a settlement of any violation which may be prosecuted criminally or civilly under federal law. The City specifically reserves any and all rights and defenses to any criminal or civil actions arising from the matters addressed in this Consent Order if prosecuted under federal law.

32. The City acknowledges and waives its right to an administrative hearing afforded by Sections 120.569 and 120.57, Florida Statutes, on the terms

16

of this Consent Order. The City acknowledges its right to appeal the terms of this Consent Order pursuant to Section 120.68, Florida Statutes, and waives that right upon signing this Consent Order.

33.    The City does not admit, by signature of this Consent Order or otherwise, any of the Department's allegations that its Facilities or Systems or the operations thereof, have caused any violation of any applicable Department standard or rule or any applicable provision of State or federal law, and enters into this Consent Order to amicably resolve the Department's allegations without resort to litigation. The City hereby expressly reserves the right to an administrative or judicial determination as to the City's compliance with any term or condition of this Consent Order, and reserves all of its legal rights and defenses in any legal action which may be initiated by the Department. Notwithstanding the foregoing, the City agrees to be bound by the terms of this Consent Order.

34.    Upon notification by letter from the City that the City has met all of the terms and conditions of this Consent Order, the Department shall review the file and, if in agreement, notify the City by letter that the enforcement case is closed. If not in agreement, the Department shall notify the City by letter, and include the reasons for not closing the case.

35.    This Consent Order is a final order of the Department pursuant to Section 120.52(7), Florida Statutes, and it is final and effective on the date filed with the Clerk of the Department unless a Petition for Administrative Hearing is filed in accordance with Chapter 120, Florida Statutes. Upon the timely filing of a petition this Consent Order will not be effective until further order of the Department.

This Space Intentionally Left Blank

AGREED AND CONSENTED TO
FOR CITY OF ST. PETERSBURG

1-31-2000
DATE

David J. Fischer
Mayor

APPROVED AS TO FORM:

1-31-2000
DATE

By: Kim Streeter
Senior Assistant City Attorney

1-31-2000
DATE

JANE K. BROWN
CITY CLERK

DONE AND ORDERED this 4 day of July, 2000, in Tampa, Florida.

FILING AND ACKNOWLEDGEMENT

FILED, on this date, pursuant to S120.52 Florida Statutes, with the designated Department Clerk, receipt of which is hereby acknowledged.

_____  2-4-00
Clerk                            Date

STATE OF FLORIDA DEPARTMENT
OF ENVIRONMENTAL PROTECTION

Deborah A. Getzoff
Director of District Management
Southwest District

Copies furnished to:
Kathy Carter, OGC, Tallahassee
Ilia Herrera, Water Facilities, Tallahassee
David Fischer, St. Petersburg
William Johnson, St.Petersburg
Roy Herwig, EPA, Atlanta

18