UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUNCOAST WATERKEEPER, OUR
CHILDREN'S EARTH FOUNDATION,
and ECOLOGICAL RIGHTS FOUNDATION,

      Plaintiffs,

v.                                                                   Case No.  8:16-cv-03319-AEP

CITY OF ST. PETERSBURG

      Defendant.

_____/

## ORDER

This matter comes before the Court on Plaintiffs' Motion on Entitlement Under Local Rule 7.01(b) for Post-Judgment Attorneys' Fees Under Section 505(d) of the Clean Water Act (the "Motion") (Doc. 234). By the Motion, Plaintiffs argue they are entitled to attorney fees associated with monitoring Defendant's compliance with the Stipulated Order of Partial Dismissal and Court's Retention of Jurisdiction ("Stipulated Order"), entered by the Court on December 17, 2018 (Doc. 187). Defendant filed a response to the Motion (Doc. 238), and Plaintiffs replied (Doc. 241). On July 30, 2025, the Court held a hearing on the Motion (Doc. 243). For the following reasons, the Motion is GRANTED.

### I.  Background

In 2018, Plaintiffs and Defendant reached a settlement to resolve the claims in this Clean Water Act citizen suit, which was memorialized in the Stipulated

Order (Doc. 187). Relevant here, the Stipulated Order creates a Compliance Monitoring Fund that directs Defendant to pay $15,000 per year for five years for compliance monitoring by engineers and any necessary mediation in the case (Doc. 187, ¶ 4). The following paragraph of the Stipulated Order provides that "Plaintiffs' claim for 'costs of litigation (including reasonable attorney and expert witness fees)' under Section 505(d) of the Clean Water Act is not resolved by this Stipulated Order, and Plaintiffs reserve all rights to seek such fees and costs" (Doc. 187, ¶ 5). The Court retained jurisdiction to enforce the terms of the Stipulated Order and further stated that "[t]he case is not dismissed as to Plaintiffs' claim for attorney fees and costs under Section 505(d) of the Clean Water Act" (Doc. 187, ¶ 10).

Following the Court's entry of the Stipulated Order, the Plaintiffs were awarded attorneys' fees and costs for their past work on the case (Doc. 226). The Court's order on fees did not address post-judgment fees to be incurred by Plaintiffs for compliance monitoring. During the following years, Plaintiffs' counsel performed legal work to monitor Defendant's compliance with the Stipulated Order. This legal work included monitoring performance of specific work requirements negotiated with Defendant, notifying Defendant of suspected non-compliance and requesting further documentation of compliance, responding to requests initiated by Defendant to extend deadlines for specific requirements in the Stipulated Order, and engaging in the "close-out process" for completion of the terms of the Stipulated Order (Doc. 234-1, ¶¶ 9–11, 13–14).

## II.    Legal Standard

Local Rule 7.01 prescribes a bifurcated procedure for determining attorney's fees, noting that "[a] party claiming post-judgment attorney's fees and related non-taxable expenses must obtain an order determining entitlement before providing a supplemental motion on amount." M.D. Fla. R. 7.01(a). Section 505(d) of the Clean Water Act provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). "A district court may award fees for post-judgment monitoring of a consent decree." *Sierra Club v. Hankinson*, 351 F.3d 1358, 1361 (11th Cir. 2003) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 557–61 (1986), supplemented, 483 U.S. 711 (1987)). To be compensable, the "work must be relevant to the rights established by the decree and related to the terms of the judgment." *Id.* (citing *Brooks v. Ga. State Bd. of Elections*, 997 F.2d 857, 864 (11th Cir. 1993)).  Whether to award such fees is within the court's discretion. *Id.*

## III.    Discussion

Plaintiffs argue an award of post-judgment attorneys' fees is appropriate because their legal work focused "entirely on ensuring the Defendant's compliance with all of the numerous work commitments they negotiated with the City in this highly-complex Stipulated Order" (Doc. 234, at 10). Defendant counters with four points: (1) an award of additional fees is not appropriate where no post-judgment enforcement action was necessary, (2) the Stipulated Order did not contemplate

3

attorneys' fees for routine compliance monitoring, (3) the compliance monitoring by Plaintiffs' attorneys was largely duplicative, and (4) awarding additional fees is not in the public interest (Doc. 238, at 2, 8, 11, 13). The Court now addresses each argument in turn.

### A. Lack of Post-Judgment Enforcement Action

Plaintiffs argue that compliance monitoring work is recoverable even without judicial intervention. Defendant counters that an award for post-judgment attorney fees is not appropriate where the court did not have to take additional enforcement action after entering the consent decree. As a preliminary matter, the Stipulated Order in this case is to be treated as a consent decree. *See Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904–05 (11th Cir. 2003) (citing *American Disability Ass'n. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002)); *see also Rowe v. Jones*, 483 F.3d. 791, 798 (11th Cir. 2007) (a "final order" retaining the court's jurisdiction should be "treated as a consent decree"). Further, the fee shifting provisions of federal environmental statutes were modeled after the pre-dating 42 U.S.C. § 1988 and are thus similarly construed. *Delaware Valley*, 478 U.S. at 559 ("[T]he purposes behind both § 304(d) and § 1988 are nearly identical, which lends credence to the idea that they should be interpreted in a similar manner.").

Judicial intervention is not required for the court to award attorney fees for post-judgment monitoring. *See Delaware Valley*, 478 U.S. 558–59 (awarding attorney fees for post-judgment monitoring in a Clean Air Act case where the Court found the compliance monitoring "was as necessary to the attainment of adequate relief

for their client as was all of their earlier work in the courtroom which secured

Delaware Valley's initial success in obtaining the consent decree" even though it

did not "involve 'traditional' legal work such as examination of witnesses or

selection of jurors for trial"); *see also Keith v. Volpe*, 833 F.2d 850, 857 (9th Cir. 1987)

(in a § 1988 case, the court held that "a finding of contempt or obstruction of

implementation is not a prerequisite to an award of attorney fees for reasonable

post-judgment monitoring of a consent decree"). "[M]easures necessary to enforce

the remedy ordered by the District Court cannot be divorced from the matters upon

which [plaintiffs] prevailed in securing the consent decree." *Delaware Valley*, 478

U.S. at 559.

Here, the fact that Defendant did not obstruct implementation of the

Stipulated Order is not a bar to Plaintiffs' recovery of fees. Rather, the question is

which measures taken by Plaintiffs were truly necessary to enforce the rights secured

by the Stipulated Order. *See Hankinson*, 351 F.3d at 1364. In affidavits attached to

the Motion and Reply and explained further in oral arguments, Plaintiffs break out

their post-judgment compliance monitoring work into several categories of tasks

(*See* Docs. 234-1; 241-1). First, Plaintiffs describe "routine compliance monitoring,"

which comprised reviewing semi-annual reports, issuing and reviewing the City's

documents requested in a public records request, and making periodic direct

requests for further documents and meetings with the City (Doc. 234-1, ¶ 9). Next,

Plaintiffs discovered and notified Defendant of potential non-compliance and

confirmed non-compliance with provisions of the Stipulated Order (Doc. 234-1, ¶

10). Plaintiffs monitored and discussed compliance with the Stipulated Order's microbial source tracking provision and ensured Defendant's payment of $200,000 to the Tampa Bay Estuary Program (Doc. 234-1, ¶ 11–12). Plaintiffs also received, reviewed, and agreed to two extensions of deadlines requested by Defendant, which became material modifications to the Stipulated Order that required court approval (Doc. 234-1, ¶ 13). Finally, Plaintiffs participated in a "close-out process" by which they certified Defendant's compliance in order to terminate the Stipulated Order (Doc. 234-1, ¶ 14).

The Court finds that Plaintiffs have established that at least some of the above tasks were necessary to ensure compliance with the Stipulated Order, while others lack support. Specifically, Plaintiffs at oral argument explained that certain documents responsive to the public records request were not in a format that allowed the engineers to review and analyze the data. Plaintiffs' efforts to obtain that data in a more usable format for their engineers are compensable. Plaintiffs' notices of confirmed non-compliance were similarly necessary to ensure Defendant corrected its actions to come into compliance. Additionally, Plaintiffs' efforts related to the Defendant's requests for extensions should also be compensable because they led to material modifications of the Stipulated Order. Conversely, Plaintiffs have not established that tasks associated with the public records request process described in the Stipulated Order, notification of potential non-compliance, the Tampa Bay Estuary Program payment, routine compliance monitoring, or the close-out process were necessary to enforce their rights. Some of that work could be

considered duplicative of the efforts of the engineers, whom Defendant was already paying for their routine compliance monitoring work.

The Court notes that the only matter before it is entitlement to fees, not the fee amount. Accordingly, the Court holds that at least some of the tasks outlined by Plaintiffs entitle them to recover attorney fees. Pursuant to Local Rule 7.01(c), the Court will more completely assess the necessity of each task when considering any supplemental motion on the fee amount.

### B.  Language of the Stipulated Order

Next, Plaintiffs argue that the Stipulated Order did not resolve the issue of post-judgment attorney fees (Doc. 234, at 11). Defendant counters that Paragraph 4 "embodies the negotiated maximum yearly cost for compliance monitoring as well as the entity responsible for undertaking that monitoring, the Plaintiffs' engineer" (Doc. 238, at 9). Paragraph 4 establishes a Compliance Monitoring Fund by stating the following:

> The City shall pay to the Plaintiffs a total of $15,000 per year for five years to fund compliance monitoring of the City's commitments under this Stipulated Order and its Attachments, for services provided by the Plaintiffs' professional engineers licensed in the State of Florida and for mediation under Paragraph 6. . . .

(Doc. 187, ¶ 4). In the following paragraph, the Stipulated Order reserves Plaintiffs' claims for attorney fees by stating that "Plaintiffs' claim for 'costs of litigation (including reasonable attorney and expert witness fees)' under Section 505(d) of the Clean Water Act is not resolved by this Stipulated Order, and Plaintiffs reserve all rights to seek such fees and costs" (Doc. 187, ¶ 5). The Court agrees with Plaintiffs

that the plain language of the Stipulated Order reserves Plaintiffs' right to seek attorney fees and does not resolve or waive the issue of future attorney fees for post-judgment compliance monitoring.

### C. Duplicative Compliance Monitoring

Defendant next argues that Plaintiffs fail to show why their additional monitoring work was necessary beyond what was performed by their engineer (Doc. 238, at 11). "Other than the drafting of the letter in 2020 and the filing of the two material modifications, the vast majority of the compliance monitoring . . . were not legal endeavors" (Doc. 238, at 11). Plaintiffs urge the Court to "reject the City's argument that all time spent by [Plaintiffs'] counsel was unnecessary" with the blanket statement that "[e]ngineers do not practice law" (Doc. 241, at 5–6) (emphasis in original). The Court agrees with Defendant in part. As outlined in Section A of this Order, specific tasks performed by Plaintiffs' counsel were necessary for the engineers to perform their compliance monitoring work, but Plaintiffs do not adequately support their claim for fees for "routine compliance monitoring."

### D. Public Interest Considerations

Finally, Defendant argues that awarding additional fees for post-judgment compliance monitoring is not in the public interest. Defendant argues that it has already invested hundreds of millions of dollars to improve its processes and infrastructure and paid over one million dollars to Plaintiffs because of this case (Doc. 238, at 14). Defendant argues that an award of attorney fees ultimately comes

from taxpayer funds, so the Court should be "vigilant to ensure that the work giving rise to monitoring fees . . . was truly necessary." *United States v. Tennessee*, 780 F.3d 332, 340 (6th Cir. 2015). Plaintiffs argue that one of the purposes of the fee-shifting provisions of the Clean Water Act is to ensure public interest groups are adequately represented because, "[u]nlike plaintiffs in traditional civil actions, plaintiffs in environmental suits do not seek to vindicate personal rights and they obtain no financial benefit if they win." *Hankinson*, 351 F.3d at 1262–63. The Court agrees that it should be vigilant to only award fees that are truly necessary, while also recognizing that none of the cases cited by either party justify a wholesale denial of post-judgment attorney fees because they will be paid from public funds.

For the foregoing reasons, it is hereby

ORDERED:

1.      Plaintiffs' Motion on Entitlement Under Local Rule 7.01(b) for Post-Judgment Attorneys' Fees Under Section 505(d) of the Clean Water Act (Doc. 234) is GRANTED.

2.      Plaintiffs shall file within thirty (30) days from entry of this Order a supplemental motion for attorney's fees and costs that complies with Local Rule 7.01(c). However, before said motion is filed, Plaintiffs shall meet and confer with Defendant to determine which fees and costs, if any, Defendant is objecting to. Any disputed entry shall be noted in the motion with the coordinating reason for the objection.

DONE AND ORDERED in Tampa, Florida, on this 8th day of September 2025.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:    Counsel of Record